# Exhibit A

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

SHANK/BALFOUR BEATTY, A Joint Venture of M.L. SHANK COMPANY, INC. and BALFOUR BEATTY CONSTRUCTION, INC.

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 99 a/k/a IBEW LOCAL 99

C.A. No.: 06-0167

**COMPLAINT**

1. Plaintiff, Shank/Balfour Beatty, files this Complaint in the nature of a Motion to Vacate and/or modify the Award of Arbitrator, pursuant to RIGL § 28-9-1 and more specifically, RIGL § 28-9-18 and RIGL § 28-9-20.

2. Plaintiff is a joint venture between M.L. Shank Company, Inc. and Balfour Beatty Construction, Inc., both California corporations, qualified to do business in the State of Rhode Island.

3. Defendant, International Brotherhood of Electrical Workers Local 99 a/k/a IBEW Local 99, is a labor organization.

4. The project in question is the "Main Spine Tunnel and Ancillary Facilities for the Narragansett Bay Commission (hereinafter "Project").

5. Plaintiff, defendant and other members of the Rhode Island Building Trades entered into a "Special Tunnel Agreement" in March, 2002 (hereinafter "Agreement"), which among other things, provided for the following:

(a) The Agreement applies to manufacturing and construction work performed by the plaintiff for the Project. The Agreement, in part, provided for "a uniform method

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

the work. If the Unions cannot reach any settlement, S/BB's original assignment shall remain in effect.

(d) GRIEVANCE PROCEDURE: Any dispute arising from performance of this STA, except for a jurisdictional dispute, or a violation of Paragraph 10, shall be settled by the following three step procedure. Step 1. The grieving Party shall notify the other Party in writing of the grievance, explaining the nature of the grievance and the remedy sought. Within five (5) working days after the grievance has been filed in writing, the Business Manager of the Union, and one representative from S/BB, each having authority to settle the grievance, shall meet in an effort to settle the grievance. Step 2. Should these designated representatives reach an impasse, it is agreed that the grievance shall be referred to the International Representative for the Union, and to M.L. Shank, Managing Partner, S/BB, in an effort to achieve resolution. Step 3. Should the best efforts of the Parties fail to achieve resolution within ten (10) working days after the grievance has been filed in writing, the grieving party may elect to have the grievance decided by arbitration. Should the grieving party so decide, it shall notify the other Party in writing within seven (7) working days after reaching Step 2 impasse. Unless the foregoing written deadline shall render the grievance null and void. After a Party has issued its letter of intent to seek arbitration, the Parties shall jointly and promptly request that the American Arbitration Association (AAA) furnish a panel of seven (7) prospective arbitrators, experienced in construction, from which the Parties will select one arbitrator by a process of striking off names. The selected arbitrator shall hear and decide the grievance. The Parties agree that, in deciding the grievance, the arbitrator shall not have the authority to change, add to, or delete from, the STA. Each Party shall bear all the costs of presenting its own case, and the arbitrators invoiced cost shall be divided equally between the Parties. Any dispute not called to the attention of the non-grieving Party in writing within ten (10) working days after its first occurrence shall be deemed to be waived. No decision by the arbitrator may provide retroactivity beyond sixty (60) days. The arbitrator's decision shall be final and binding.

6. On or about February 14, 2005, defendant filed a "Grievance" with plaintiff alleging that the:

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

> Electrical work on the Combine Sewer Overflow Abatement Project has been done, and is continuing to be done by unlicensed 3rd shift personnel other than members of IBEW Local Union 99 in violation of the Special Tunnel Agreement and the State of Rhode Island licensing laws, . . .

7. The "Grievance" sought as a remedy wages and benefits that would have been paid to a Journeyman Electrician on the 3rd shift and further stated "These wages and benefits shall be divided equally among those electricians employed on the C.S.O. project during the length of the 3rd shift's existence, but who were never assigned to work on it."

8. Thereafter, defendant filed a Demand for Arbitration dated February 25, 2005, whereby it claimed that the nature of the dispute was "Electrical work performed by individuals other than members of Local 99 IBEW" and that the claim or relief sought was "Cease and desist, contract compliance, compensation and other relief as appropriate".

9. The plaintiff responded to defendant in that, among other things: (1) there was no basis for processing a grievance or a jurisdictional dispute; and (2) the dispute involved the turning on of a "master switch" which did not necessitate an electrician's services and said switch was turned on by a member of the Operating Engineers.

10. The American Arbitration Association scheduled arbitration hearings on May 6, 2005 and June 6, 2005, both of which were recorded by stenographic means.

11. On or about October 10, 2005, the arbitrator, Albert G. Murphy, made an award in favor of defendant, a copy of the award is attached hereto. Said award was received by the plaintiff on October 12, 2005.

12. The award, among other things, decided the following remedies:

(a) The grievance is sustained

Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

The Company shall forthwith assign a licensed electrician to the third shift.

The Company shall provide a sum of money sufficient to pay back pay and benefits for one third shift electrician commencing on August 21, 2005, to be divided equally among such employees as contemplated in the Union's "Remedy Sought" portion of the grievance.

At the request of either party I will retain jurisdiction for a reasonable period of time to address any problems arising in the implementation of this award. (Page 1 of award)

(b) Further, the arbitrator, over the objection of the plaintiff, stated that the matter was arbitrable and that the arbitrator "has been afforded the authority under the agreement to adjudicate substantive arbitrability".

(c) The Employer has interposed reservations of rights to claim both substantive and procedural non-arbitrability. (Page 3 of award)

(d) The Company's position of non-arbitrability included:

First, the matter raised by the grievance, the allocation of electrical work, is specifically exempted by Section 7 of the Agreement as being a jurisdictional dispute.

Second, the question of arbitrability is not properly determined by the arbitrator, it is more appropriately a question for a court . . . (Pages 4 and 5 of award)

(e) If the Company wanted to seek judicial interpretation of the arbitration clause it should have done so in the first instance. It did not. (Page 7 of award)

(f) Accordingly, the Company's claim of non-arbitrability on the grounds of lack of authority is denied. (Page 7 of award)

(g) The situation here, as I observed at the first hearing, is not what the Board calls a "traditional jurisdictional dispute". (Page 8 of award)

(h) That the employee Umbling:

True Copy Attest

[signature]

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

who as a member of management has performed work on electrical equipment in violation of clearly marked OSHA prohibitions. THAT HE WAS AND IS A MEMBER OF MANAGEMENT IS OBVIOUS BY VIRTUE OF HIS DESIGNATION AS A FOREMAN AND HIS FUNCTIONING AS A SUPERVISOR. HIS MEMBERSHIP IN THE OPERATING ENGINEERS IS INCONSEQUENTIAL. (Page 8 of award)

(i) In summary, the dispute in this case has nothing to do with jurisdictional matters; it is purely and simply a complaint by Local 99 of unsafe job conditions brought about by the actions of one of its foremen. (Page 9 of award)

13. In a one paragraph opinion on Page 9 of the award, the arbitrator stated as follows:

Turning to the merits of the case, it is apparent that the same facts which compel a finding of arbitrability are equally persuasive on the question raised by the grievance. As indicated immediately above, the grievance claimed unsafe work conditions, which claim is well supported by the evidence. Rather than address the problem at its root, i.e. Mr. Umbling, the Company took a rather dismissive attitude towards the Union's complaint. Hence this grievance.

**COUNT I**
**Arbitrability**

14. Plaintiff realleges and incorporates paragraphs 1 through 13 of this Complaint as though fully set forth herein.

15. The arbitrator exceeded his powers and/or so imperfectly executed them that a mutual and final definite award upon the subject matter submitted was not made (RIGL § 28-9-18(2)) and, there was no valid submission of arbitrability and the arbitrator manifestly disregarded the law.

16. The arbitrator has awarded upon a matter not submitted to him, not affecting the merits of the decision upon the matter submitted (RIGL § 28-9-20(2)).

rue Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

17. Specifically, first, the arbitrator exceeded his powers regarding arbitrability of the dispute between the parties in that the Agreement between the parties specifically excludes jurisdictional disputes from the arbitration clause.

18. Specifically, second, the arbitrator exceeded his powers by deciding that he had the authority to decide arbitrability whereby it is a matter of settled law that courts, not the arbitrators, decide arbitrability.

WHEREFORE, the plaintiff demands the Award of the Arbitrator be vacated and plaintiff reimbursed, by defendant, for fees and costs involved in the arbitration of this matter and for reasonable costs and attorney fees in this action.

**COUNT II**
**Arbitrator Errors**

18. Plaintiff realleges and incorporates paragraphs 1 through 17 of this Complaint as though fully set forth herein.

19. The arbitrator's decision is contrary to RIGL 21 28-9-18 and RIGL § 28-9-20 for the following reasons:

(a) The subject matter presented to the Arbitrator was not subject to arbitration, as protested by the plaintiff. Arbitrability was contested by the plaintiff at the outset of the arbitration hearings.

(b) The arbitrator erroneously concluded that the work in question was that of the defendant electricians, notwithstanding the Agreement provides the plaintiff exclusive authority to assign the work, and notwithstanding that a jurisdictional

rue Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

dispute procedure had taken place pursuant to Section 7 of the Agreement, which had determined that the work in question was not that of the electricians.

(c) The arbitrator erroneously held that electricians were needed on the third shift.

(d) The arbitrator awarded back pay and other benefits for a third shift electrician who was never employed, although no third shift electrician was needed. In addition, the arbitrator awarded back pay and other benefits for a third shift electrician after a several month period, because of a single incident, taking seconds to perform, i.e. the pulling of a "breaker reset button".

(e) The arbitrator erroneously held that the plaintiff must assign a licensed electrician to the third shift. Notwithstanding the plaintiff's exclusive right to assign and notwithstanding the fact that the arbitrator ordered an assignment of an electrician to the third shift, whereby the only issue at the arbitration was the apparent need for an electrician for turning on a switch. The arbitrator thus has created "feather bedding" by compelling the plaintiff to utilize an electrician for an entire shift versus assigning a licensed electrician on an as needed basis for any electrical work that is within the jurisdiction of the defendant.

(f) The arbitrator erroneously held that the work in question, i.e. "turning on a breaker" is the work of electricians.

(g) The arbitrator disregarded the Agreement amongst the parties as to management rights and work assignment.

rue Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

(h) In rendering his award, the arbitrator plainly disregarded the very essence of the Agreement as to the plaintiff's management rights, i.e. assign ability and the procedure noted in Section 7 as to jurisdictional disputes.

WHEREFORE, the plaintiff requests this Honorable Court for the following relief:

1. The Award of the Arbitrator be vacated.

2. Such other relief as this Honorable Court deems appropriate.

Plaintiff,
Shank/Balfour Beatty A Joint Venture of
M.L. Shank Company, Inc. and Balfour
Beatty Construction, Inc.
by their Attorney:

Girard R. Visconti, #0566
Visconti & Boren Ltd.
55 Dorrance Street
Providence, RI 02903
(401) 331-3800 (Telephone)
(401) 421-9302 (Facsimile)

Dated: January 9, 2006

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

# American Arbitration Association

## LABOR ARBITRATION TRIBUNAL

In the Matter of the Arbitration between

IBEW, LOCAL 99

&

SHANK/BALFOUR BEATTY

CASE NUMBER: 11 300 00458 05

## AWARD OF ARBITRATOR(S)

I (WE), THE UNDERSIGNED ARBITRATOR(S), having been designated in accordance with the arbitration agreement entered into by the above-named parties and dated and having been duly sworn and having duly heard the proofs and allegations of the parties, AWARD as follows:

The grievance is sustained.

The Company shall forthwith assign a licensed electrician to the third shift.

The Company shall provide a sum of money sufficient to pay back pay and benefits for one third shift electrician commencing on August 21, 2005, to be divided equally among such employees as contemplated in the Union's "Remedy Sought" portion of the grievance.

At the request of either party I will retain jurisdiction for a reasonable period of time to address any problems arising in the implementation of this award.

October 10, 2005
(Date)

A True Copy Attest
(Signature of Arbitrator)
Albert G. Murphy

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

STATE OF
} SS:
COUNTY OF

On this day of , 19 , before me personally came and appeared , to me known and known to me to be the individual(s) described in and who executed the foregoing instrument, and he acknowledged to me that he executed the same

AMERICAN ARBITRATION ASSOCIATION
LABOR TRIBUNAL

ARBITRATION AWARD

| | |
|---|---|
| In the matter of: | AAA # 11 300 00458 05 |
| IBEW LOCAL 99 | Dates of Hearings: May 6, 2005<br>June 6, 2005 |
| And | |
| SHANK/BALFOUR BEATTY | Date of award: October 10, 2005 |
| ARBITRATOR: | Albert G. Murphy, Esq. |
| APPEARANCES: | |
| For the Union: | Gerard P. Cobleigh, Esq. |
| For the Company: | Michael L. Shank, Managing Partner |

II

ISSUE:

The parties were unable to agree on a statement of the issue..

The Union suggested: What shall be the disposition of the grievance?

The grievance stated:

> "Electrical work on the Combine Sewer Overflow Abatement Project has been done, and is continuing to be done by unlicensed 3rd shift personnel other than members of IBEW Local Union 99 in violation of the Special Tunnel Agreement and the State of Rhode Island licensing laws, with the knowledge and apparent approval of Michael Shank, Managing Partner, S/BB."

The Company put forth two statements of issues:

Whether the matter is arbitrable as being a jurisdictional dispute, exempted under Section 7 of the Agreement.

Whether the arbitrator has been afforded the authority under the agreement to adjudicate substantive arbitrability

The Union's suggested issue will be adopted on the merits; the Company's as it relates to the arbitrability questions raised.

rue Copy Attest

[signature]

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

APPLICABLE CONTRACTUAL PROVISIONS:

**SPECIAL TUNNEL AGREEMENT**

1. This is a pre-hire Special Tunnel Agreement (STA) between Shank/Balfour Beatty (S/BB) and Laborers' International Union of North America, Rhode Island Laborers District Council, on behalf of Local Union 271 (Laborers); International Union of Operating Engineers, Local Union 57 (Operating Engineers); and the International Brotherhood of Electrical Workers, Local Union 99 (Electricians). The term "Union" or "Unions" shall refer to the Laborers, Operating Engineers, or Electricians, individually or collectively. The term "Parties" shall refer to S/BB and the Unions.

....

7. JURISDICTION: S/BB shall assign jurisdiction for the work as follows:

A. In general, the Operating Engineers shall have jurisdiction for operating the TBM, tunnel locomotives, concrete pumps, all cranes, excavators, backhoes, front end loaders, skid steer loaders (Bobcats) forklifts, dozers, graders, compressors, engine driven pumps, mine utility trucks, and raise boring machines. The Operating Engineers shall have jurisdiction for maintaining equipment; and for performing layout, fitting, burning and welding in connection with manufacturing plant and equipment; and for surveying (except surveying requiring the use of a Rhode Island Registered Professional Land Surveyor)

B. In general, the Electricians shall have jurisdiction for performing electrical work required for manufacturing equipment and for construction of the work.

C. In general, the Laborers will have jurisdiction for performing laborer/miners work required for manufacturing equipment and for construction of the work. Should a jurisdictional dispute arise, the dispute will be settled by the Unions themselves, and S/BB shall be bound by that settlement. No settlement, however, shall result in S/BB having to employ a double crew or use more employees than the minimum required to perform the work, nor shall it result in S/BB having to use employees who are not qualified to perform the work. If the Unions cannot reach any settlement, S/BB's original assignment shall remain in effect.

11. GRIEVANCE PROCEDURE: Any dispute arising from performance of this STA except for a jurisdictional dispute...shall be settled by the following three step procedure...Step 3. Should the best efforts of the parties fail to achieve resolution within ten (10) working days after the grievance has been filed in writing, the grieving party may elect to have the grievance decided by arbitration. Should the grieving party so decide, it shall notify the other Party in writing within seven (7) working days after reaching Step 2 impasse. Unless the

A True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Rhode Island

foregoing written deadlines have been extended by mutual agreement, in writing, failure to meet a deadline shall render the grievance null and void. After a Party has issued its letter of intent to seek arbitration, the Parties shall jointly and promptly request that the American Arbitration Association furnish a panel of seven (7) prospective arbitrators, experienced in construction, from which the Parties shall select one arbitrator by a process of striking off names. The selected arbitrator shall hear and decide the grievance. The Parties agree that, in deciding the grievance, the arbitrator shall not have the authority to change, add to, or delete from the STA. Each party shall bear all costs of presenting its own case, and the arbitrator's invoiced cost shall be divided equally between the Parties. Any dispute not called to the attention of the non-grieving Party within ten (10) days of its firs occurrence shall be deemed to have been waived. No decision by the arbitrator may provide retroactivity beyond sixty (60) days. The arbitrator's decision shall be final and binding.

INTRODUCTION:

This case arises from a grievance brought to protest the alleged performance of electrical work by an Operating Engineers foreman. Not having been resolved through the contractual grievance procedure, the matter was claimed for arbitration under the rules of the American Arbitration Association.

Hearings were held on the dates indicated. Both parties appeared and were heard and have filed briefs upon receipt of which the hearings were declared closed by Case Manager Molly A. Brown.

The Employer has interposed reservations of rights to claim both substantive and procedural non-arbitrability.

BACKGROUND OF THE CASE:

The Parties, Local 99 of the International Brotherhood of Electrical Workers, ( "The Union") and Shank/Balfour Beatty ("S/BB" or "The Company") are parties to a collective bargaining agreement applicable to a project known as the "Providence Combined Sewer Overflow Tunnel".

This is a huge tunnel, eventually to stretch 16,000 feet under the City of Providence, having the capacity to retain 60 million gallons of waste water. The digging is done by a tunnel boring machine (TBM) which is 225 feet long, 30 feet in diameter, and weighs 690 tons. It is capable of drilling through solid rock at the rate of 19 feet per hour.

The collective bargaining agreement, referred to as the "Special Tunnel Agreement", includes, besides Local 99, the Operating Engineers and LIUNA.

Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

As the Union's version of the issue indicates, much if not all of the dispute from a factual basis revolves around the electrical equipment and other components connected with the project.

Credible testimony and photographs showed a total of twelve electrical panels, eight on the upper level and four on the lower. Each panel contains terminal blocks, contactors, motor starters and control circuits with voltage up to 480.

There are prominently displayed required OSHA warnings: "480 VOLTS-WARNING, PANEL HAS MUTIPLE VOLTAGE SUPPLY SOURCES. DANGER, ELECTRICAL EQUIPMENT, AUTHORIZED PERSONNEL ONLY."

On August 24, 2004, Patrick Brady, second shift steward, having received complaints from workers, and having himself observed indications that non-electricians were getting involved with what he described as "high voltage equipment, doing work." (T2-26), addressed a group of third shift workers who he believed were doing such work. He told them that what they were doing was, among other things, dangerous.

He was then confronted by Donald Umling who told him, in a fairly hostile manner, that he, Umling, would pretty much do what he pleased, that he knew more about electricity than Brady and that he didn't care if what he said "pissed off" Brady.

The following February, Brady had another confrontation with Umling when he, Brady, was trouble shooting a line leading to a gas detection breaker. While Brady and a partner were in one part of the machinery trying to find out the problem, Umling was in another, indiscriminately switching breakers on and off. According to Brady, "If one of us had been in that panel, he would have been electrocuted." T2-32)

When he again confronted Umling, he said, "Don't bother me". Brady then complained to his business agent, which, in his words, "led to a letter coming back from Mr. Shank saying that it was basically no big deal. But he also in that letter labeled Donald Umling as his supervisor." (T2-32)

At the hearing of June 6, 2005, Mr. Brady was asked, by Mr. Shank,

> "And if electrical work needs to be done on graveyard shift or at some time perhaps after you've gone home, isn't it true that electricians are called out to do that kind of work?"

He responded:

> "Well, one time they called them out was very recently. Last Thursday our shift ended at 2:00 that day and I think at 4:00, somebody other than an electrician was up rearranging one of the 480 volt lights in the shaft and it filled up with water and it shut down the entire—it shorted-out two of the 480 phases and shut down the

Attest
True Copy
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

electrical power right out of the street and shut the job down. That's when they called in the electrician to straighten it out…" (T2-p36, 37)

Mr. Shank later inquired:

Q."…The other workers on the job, if they want to start an electrical motor, they don' have to know what's inside the panel, do they?

A. They should.

Q. Why should they?

A. If they're going in there they should know what the hazards are.

Q. That's not the question. My question is, to start a motor, any craft can push a button and the motor will start, isn't that true?

A. Sure.

Q. And they don't have to know what's inside that panel?

A. I disagree. Because you've got to know what not to hit. I mean, if you look at the array of electrical equipment in there, there's a lot of exposed parts in there. If you don't know electricity, you're at risk. That's my issue." (T2, p38, 39)

Another Union witness, Wolfgang Franzblau, described an incident in December, 2004, wherein Mr.Umling attempted to extinguish an electrical fire by pouring water on it. (T2-p51)

The matter came to a head in March, 2004, when, after a complaint by Local 99, a meeting was held, attended by the three Unions and Mr. Shank. At the meeting, Mr. Shank set forth the Company's position as to what was electrical work; "Pushing buttons to start motors, resetting breakers, plugging in electrical cords, dismounting electrical motors from the equipment once the electricians had turned the power on and off…" (T2p59)

The Company introduced copies of letters sent by Mr.Shank to representatives of he Operating Engineers and Laborers in which he solicited, and got, endorsements of the Company's positions on what constituted "electrical work." However, neither Union appeared at nor otherwise participated at the hearings in this matter.

COMPANY POSITION:

As indicated by its proffered statement of the issues, the Company claims that the case is not arbitrable on two counts.

Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

First, the matter raised by the grievance, the allocation of electrical work. is specifically exempted by Section 7 of the Agreement, as being a jurisdictional disp....

Second, the question of arbitrability is not properly determined by the arbitrator but is more appropriately ~~a questio~~..... a court, citing Steelworkers vs. *Warrior and Gulf Navigation Company,* 363 U.S.574, 582 (1960) "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agree to arbitrate is to be determined by the court, not the arbitrator..."

UNION POSITION:

The Union's case is, as indicated in the original grievance, consists in the claim that electrical work, "has been done and is continuing to be done by unlicensed third shift personnel....

In support of this position, it presents testimony of second shift steward Patrick Brady, an electrician, backed up by Wolfgang Franzblau, an operating engineer, to the effect that, on several occasions, Donald Umling, a foreman and a member of the Operating Engineers, had performed work on or involving high voltage electrical equipment clearly marked as such by OSHA required signs.

Brady expressed the opinion that on at least one and possibly two of these occasions, considerable harm, including electrocution, might have resulted.

Franzblau further described an incident in which Mr. Umling attempted to extinguish an electrical fire by pouring water on it.

DISCUSSION

Necessarily, because they affect my jurisdiction, i.e. power to act, the Company's claims of non-arbitrability must first be determined.

Taking these matters in proper sequence, the first such claim to be addressed would be the breadth of my authority under the agreement, i.e. whether it carries with it the ability to adjudicate the core question of whether the issue as stated between the parties is arbitrable under the Agreement.

Such a determination would depend on two factors. first, the wording of the grant of authority in the Agreement and second, the context in which it is to be evaluated. Here, the grievance procedure is applicable to "any dispute arising from the performance of the STA, except for a jurisdictional dispute...[which dispute] shall be settled by the following three step procedure. The third step permits the grieving party "to elect to have the grievance decided by arbitration."

The agreement then goes on to provide, "The selected arbitrator shall hear and decide the grievance. The parties agree that, in deciding the grievance, the arbitrator shall not have the

True copy attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

authority to change, add to, or delete from the STA...No decision by the arbitrator may provide retroactivity beyond sixty days. The arbitrator's decision shall be final and binding."

It requires no monumental intellectual effort to infer from such broad language an implied authority to determine whether or not some particular matter was intended by the parties to be subject under the contract to arbitration.

But, even if it did, there is a far more practical question remaining implicit in the Company's position. If arbitrability of a particular issue is to be subject to determination by a court, which court is that and how does the question get before that court?

The obvious course suggested by the Company's approach is to permit the matter to be arbitrated, at the termination of which the unsuccessful party would then go to court and pursue the claim that the matter was not subject to arbitration in the first place. Then, if successful, that party could proceed to litigate the matter from scratch.

This phenomenon was visited (albeit in reverse) in Franceschi vs Hospital San Carlos, Inc. et al, USCA1 Opinion 04-2104, August 24, 2005. Here, the defendant hospital went the entire litigation route and, at the unsuccessful end thereof, cited an arbitration clause in the agreement subject of the suit.

The precise question was whether the defendant, having raised the question of an arbitration clause, and having been ruled against by the trial court, had an obligation to pursue an interlocutory appeal of the denial. The Court, citing Colon v. R.K. Grace & Co, 358 Fed.3rd 1, 4 (1st Cir 2003) ruled that failure to take such an appeal could forfeit the right to arbitration;

> "...the reason is that it is wasteful to have a full trial and then determine by a post-trial appeal that the whole matter should have been arbitrated and so start again..."

The same rationale, although, as suggested, in reverse, would appear to apply here. If the Company wanted to seek judicial interpretation of the arbitration clause, it should have done so in the first instance. It did not.

Accordingly, the Company's claim of non-arbitrability on the grounds of lack of authority is denied.

The Company's other claim of non-arbitrability is founded on the proposition that jurisdictional disputes are exempted from the grievance process under section 11. Grievance Procedure.

True Copy Attest

Its conclusion that the electrical work involved here was not appropriately assigned to Local 99 rests on the fact that, at a meeting requested by Local 99 to protest what it considered unsafe practices involving electrical equipment, both the Operating Engineers

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

and the Laborers agreed with management that the work in question was not exclusively Local 99's.

Thereafter, quite possibly in preparation for this case, Mr. Shank wrote letters to the Operating Engineers and the Laborers, asking for their recollections of the meeting. Both concurred with Mr. Shank's version of events.

Neither Union participated in this grievance, appeared at the hearing or otherwise was involved, except that copies of their responses to Mr. Shank's letter were offered in evidence.

At the core of the dispute at this point is the nature of what constitutes a jurisdictional dispute.

At the first hearing, after a lengthy colloquy with the advocates, I stated my understanding of the definition of the term "jurisdictional dispute", saying,

> "...if a jurisdictional dispute is one between two unions over a proper allocation of work, this is not it. This is a question of management, a foreman, doing electrical workers' work and an objection to that by the electricians..." (T1,p 21,22)

In a case before the National Labor Relations Board, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT 190, LOCAL LODGE 1414 and INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10 AND INTERNATIONAL LONGSHORE AND WAREOUSE UNION, LOCAL 75, Case No. 32-CD-163-1, June 30, 2005, the Board observed,

> "...therefore,, we conclude that the evidence fails to establish a *traditional jurisdictional dispute between two rival groups of employees claiming the same work, with an innocent employer caught in the middle...* " (Italics added)

The situation here, as I observed at the first hearing, is not what the Board calls a "traditional jurisdictional dispute."

The complaining party, Local 99, is not complaining that either of the other two unions is getting work that 99 should have. Rather, the complaint is that Mr. Umling, alone, is performing electrical work which he is not capable of performing safely. Local 99 is not grieving the pulling of plugs, operation of starter motors, etc., by other members of the Operating Engineers or Laborers. It is grieving the actions of Mr. Umling who, *as a member of management*, has performed work on electrical equipment in violation of clearly marked OSHA prohibitions. That he was and is a member of management is obvious by virtue of his designation as a foreman and his functioning as a supervisor. His membership in the Operating Engineers is inconsequential.

The OSHA warnings in question, that the equipment is to be operated by "authorized" persons only, clearly require operation by licensed electricians, which Mr. Umling is not.

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence Rhode Island

The letters from Mssrs Houlihan of the Operating Engineers and Sabatoni of the Laborers, as hearsay are entitled to markedly reduced weight and in fact have minimal impact.

In summary, the dispute in this case has nothing to do with jurisdictional matters; it is purely and simply a complaint by Local 99 of unsafe job conditions brought about by the actions of one of its foremen.

Turning to the merits of the case, it is apparent that the same facts which compel a finding of arbitrability are equally persuasive on the question raised by the grievance. As indicated immediately above, the grievance claimed unsafe work conditions, which claim is well supported by the evidence. Rather than address the problem at its root, i.e. Mr. Umling, the Company took a rather dismissive attitude towards the Union's complaint. Hence this grievance.

On the question of a remedy, the Union has requested back pay and benefits to be divided amongst electricians employed between June 9, 2004 and such time as an electrician shall be placed on the third shift. The Agreement, however, restricts the authority of the arbitrator to award more than sixty days in arrears, which I would calculate as August 21, 2005.

AWARD

The grievance is sustained.

The Company shall forthwith assign a licensed electrician to the third shift.

The Company shall provide a sum of money sufficient to pay back pay and benefits for one third shift electrician commencing on August 21, 2005, to be divided equally among such employees as contemplated in the Union's "Remedy Sought" portion of the grievance.

At the request of either party I will retain jurisdiction for a reasonable period of time to address any problems arising in the implementation of this award.

Albert G. Murphy, arbitrator

rue Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence. Rhode Island