# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SHANK/BALFOUR BEATTY, A Joint Venture of M.L. SHANK COMPANY, INC., and BALFOUR BEATTY CONSTRUCTION, INC. | : | C.A. No.: 06-43ML |
| v. | : | |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 99 a/k/a/ IBEW LOCAL 99 | : | |

## PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD

Plaintiff, Shank/Balfour Beatty ("Shank") files its motion to vacate an arbitration award and state as follows:

1. Shank has filed a complaint and an amended complaint seeking to vacate an arbitration award rendered by an arbitrator under a collective bargaining agreement.

2. The International Brotherhood of Electrical Workers Local 99 ("Local 99") has filed a counterclaim to confirm the arbitration award.

3. Shank and Local 99 were parties to a collective bargaining agreement, entitled Special Tunnel Agreement, covering all construction and related work performed at the "Maine Spine Tunnel and Ancillary Facilities" which is being performed by Shank under contract with the Narragansett Bay Commission.

4. After Local 99 filed a grievance under the Special Tunnel Agreement, two arbitration hearings were held. On October 13, 2005, Shank received the arbitrator's award in favor of Local 99 and against Shank.

5. By this motion to vacate, Shank seeks to vacate the arbitration award on the following grounds:

a. The arbitrator exceeded his authority by ignoring the express jurisdictional dispute exclusion from the grievance and arbitration provisions of the Special Tunnel Agreement;

b. The arbitrator exceeded his authority by deciding substantive arbitrability;

c. The arbitrator exceeded his authority by impermissibly modifying the Special Tunnel Agreement; and

d. The arbitration award does not draw its essence from the Special Tunnel Agreement.

6. In conjunction with this motion, the parties have entered into a Stipulation of Undisputed Facts and Exhibits which are submitted simultaneously with the filing of this motion.

For the reasons more fully set forth in the separate Memorandum of Law submitted in support of this motion to vacate, Shank contends that this Court must vacate the arbitration award.

Plaintiff requests oral argument.

Plaintiff,
Shank/Balfour Beatty, A Joint Venture of M.L. Shank Company, Inc. and Balfour Beatty Construction, Inc.
By their Attorney:

Girard R. Visconti
Visconti & Boren Ltd.
55 Dorance Street
Providence, RI 02903
(401) 331-3800 (Telephone)
(401) 421-9302 (Facsimile)

# CERTIFICATION

I, the undersigned, do hereby certify that I mailed a true copy of the within document on this 26th day of May, 2006 to:

Gerard P. Cobleigh, Esq.
Cobleigh & Giacobbe
70 Jefferson Blvd.
Warwick, RI 02888

Carly Beauvais Iafrate, Esq.
170 Westminster Street
Suite 601
Providence, RI 02903

Susan Marfeo

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| SHANK/BALFOUR BEATTY, A Joint Venture of M.L. SHANK COMPANY, INC., and BALFOUR BEATTY CONSTRUCTION, INC. | : | C.A. No.: 06-43ML |
| v. | : | |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 99 a/k/a/ IBEW LOCAL 99 | : | |

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD

# TABLE OF CONTENTS

PAGE


INTRODUCTION ........................................................................................................ 1

STATEMENT OF THE CASE......................................................................................... 2

A. Statement Of The Facts ........................................................................................ 2

B. The Arbitration Proceedings Under Section 11 ..................................................... 7

C. The Arbitrator's Award.......................................................................................... 9

D. The Proceedings In This Court ........................................................................... 10

LEGAL ARGUMENT ................................................................................................. 10

A. The Law To Be Applied ....................................................................................... 10

B. This Court Must Decide Substantive Arbitrability—Not An Arbitrator ............. 11

C. Shank Properly And Explicitly Preserved The Issue Of Substantive Arbitrability And Did Not Submit That Issue To The Arbitrator ............................................ 15

D. Local 99's Grievance Is Not Arbitrable ............................................................... 17

1. The Grievance Involves A Jurisdictional Dispute .................................. 17

2. The Dispute Is Not Arbitrable Because It Is Expressly Excluded From The Arbitration Clause ............................................................................ 20

E. The Arbitrator's Remedy Does Not Draw Its Essence From The Agreement ..... 23

CONCLUSION............................................................................................................. 26

# TABLE OF AUTHORITIES

PAGE

## CASES

*AT& T Tech., Inc. v. CWA*
475 U.S. 647 (1986) ........ 12

*Atkinson v. Sinclair Refining Co.*
370 U.S. 238 (1962) ........ 13

*Contra Costa Legal Assistance Workers v. Contra Costa Legal Services Found.*
878 F.2d 329 (9th Cir. 1989) ........ 14, 18

*District 50, Mineworkers v. Chris-Craft Corp.*
85 F.2d 946 (6th Cir. 1967) ........ 18, 20, 22

*G.T. Schjeldahl Co., v. Local Lodge 1680 of District Lodge No. 64*
393 F.2d 502 (1st Cir. 1968) ........ 14

*General Drivers, Warehousemen and Helpers, Local Union No. 509 v. Ethyl Corp*
68 F.3d 80 (4th Cir. 1995) ........ 14, 18, 21

*Georgia-Pacific Corp. v. Local 27, Paperworkers*
864 F.2d 940 (1st Cir. 1989) ........ 23, 25

*Int'l Ass'n of Machinist and Aero Space Workers v. Caribe General Electric Products, Inc.*
108 F.3d 422 (1st Cir. 1997) ........ 13

*Int'l Ass'n of Machinist, Lodge No. 1777 v. Fansteel*
900 F.2d 1005 (7th Cir. 1990) ........ 17

*Local 13, Int'l Federation of Professional and Technical Engineers, AFL-CIO v. General Electric Co.*
531 F.2d 1178 (3d Cir. 1976) ........ 21

*Local 4-449, Oil, Chemical and Atomic Workers Union v. Amoco Chemical Corp.*
589 F.2d 162 (5th Cir. 1979) ........ 22

*Northern California District Council of Laborers (W.B. Skinner)*
292 NLRB 1035 (1989) ........ 18

*Operating Engineers v. J.S. Alberici Constr. Co.*
936 F.2d 390 (8th Cir. 1991) ........ 20, 21

TABLE OF AUTHORITIES CONT'D

PAGE

CASES

*Poland Spring Corp. v.*
*United Food and Chemical Workers Int'l Union, AFL-CIO, Local 1445*
314 F.2d 29 (1st Cir. 2002), *cert. denied,* 540 U.S. 818 (2003) .................................. 25

*R.W. Granger & Sons, Inc.* v. *Eastern Massachusetts Carpenters*
686 F.Supp. 22 (D. Mass. 1988) .......................................................................... 16

*S.D. Warren Co. v. Paperworkers Local 1069*
846 F.2d 827 (1st Cir. 1988) ......................................................................... 14, 24

*Schnabel Foundation Co. v. Operating Engineers, Local 542*
410 F.Supp.2d 410 (E.D. Pa. 2006) ................................................................... 21

*Steelworkers v. American Mfg. Co.*
363 U.S. 564 (1960) ............................................................................................ 11

*Steelworkers v. Ent. Wheel and Car Corp.*
363 U.S. 593 (1960) ....................................................................................... 11, 23

*Steelworkers v. Lukens Steel Co.*
969 F.2d 1468, 1475 (3d Cir. 1992) .................................................................... 14

*Tejidos De Coamo, Inc. v. Int'l Ladies Garment Workers Union*
22 F.3d 8 (1st Cir. 1994) ..................................................................................... 15

*Textile Workers v. Lincoln Mills*
353 U.S. 448 (1957) ............................................................................................ 10

*Tile, Marble, Terrazzo Finishers, Local 47-T (Grazzini Bros & Co.)*
315 NLRB 520 (1994) ......................................................................................... 18

## TABLE OF AUTHORITIES CONT'D

PAGE

## STATUTES

§ 301[LMRA] .......... 10
§ 301(a) .......... 2, 10
§ 1391(b) .......... 3
§ 152(6) and (7) .......... 2
§ 158(b)(4)(D) .......... 17
§ 185(a) .......... 2
§ 185(c) .......... 3
§ 158(b)(4)(D) .......... 2

National Labor Relations Act
Section 8(b)(4)(D) .......... 2, 18

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| SHANK/BALFOUR BEATTY, A Joint Venture of M.L. SHANK COMPANY, INC., and BALFOUR BEATTY CONSTRUCTION, INC. | : | C.A. No.: 06-43ML |
| v. | : | |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 99 a/k/a/ IBEW LOCAL 99 | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD**

I.

INTRODUCTION

This case involves a labor arbitration award that must be vacated. The award directly conflicts with over forty-five years of United States Supreme Court and Circuit Court of Appeals decisions setting forth the distinct functions of an arbitrator and the courts in labor arbitration cases.

As shown below, the arbitration award departs from the established rulings of the United States Supreme Court, the First Circuit and other federal courts in that: (1) the arbitrator erroneously decided that he had the power to determine substantive arbitrability; and (2) the award exceeds the power and authority granted to the arbitrator in the collective bargaining agreement. Consequently, the award does not draw its essence from that collective bargaining agreement.

In this case, the Court, not an arbitrator, must decide whether the dispute is a jurisdictional dispute. If so, the dispute is not arbitrable because a jurisdictional dispute is expressly excluded from the arbitration clause.

A jurisdictional dispute is defined in the National Labor Relations Act as a demand "to assign particular work to employees in a particular labor organization or in a particular trade, craft or class rather than to employees in another labor organization or in another trade, craft or class." Section 8(b)(4)(D) of the National Labor Relations Act as amended ("Act"), 29 U.S.C. section 158(b)(4)(D). The undisputed facts establish that the grievance on its face and the conduct of the parties acknowledged the jurisdictional nature of the dispute in this case.

## II.

## STATEMENT OF THE CASE

### A. Statement Of The Facts.

Shank/Balfour Beatty ("Shank") is a joint venture between two corporations, M.L. Shank Co., Inc. and Balfour Beatty Construction, Inc. Shank's office and principal place of business is located in Providence, Rhode Island. Shank is an employer engaged in interstate commerce and in an industry affecting commerce within the meaning of section 2(6) and 2(7) of the Act [29 U.S.C. § 152(6) and (7)] and within the meaning of section 301(a) [29 U.S.C. § 185(a)] ("Section 301"). (STIPULATION, PARAGRAPH 1).[1]

[1] The parties have entered into a stipulation of undisputed facts and joint exhibits which is hereafter referred to as "Stipulation." In this Memorandum of Law, the exhibits will be referred to as identified in the Stipulation, *e.g.*, "JT. EX. __" referring to Joint Exhibits, "U-1 __" referring to Local 99 exhibits, etc. The transcript of the two arbitration hearing days will be referred to as "TR. 1" for the first day of the arbitration and "TR. 2" for the second day of the arbitration hearing.

International Brotherhood of Electrical Workers Local 99 ("Local 99") is a labor organization which represents employees in an industry affecting commerce. Its duly authorized officers or agents are engaged in representing or acting for employee members in, among other areas, Providence, Rhode Island. Local 99 transacts business in Providence, Rhode Island and has an office and place of business in Providence, Rhode Island. (STIPULATION, PARAGRAPH 2).

The parties stipulated that venue is appropriate in this Court under section 301(c) of the Labor Management Relations Act [29 U.S.C. § 185(c)] and 28 U.S.C. section 1391(b). (STIPULATION, PARAGRAPH 3).

In 2002, Shank was awarded a manufacturing and construction contract by the Narragansett Bay Commission for the "Main Spine Tunnel and Ancillary Facilities" ("Project"). (JT. EX. 1, PAGE 1). Thereafter, Shank and three labor organizations, Local 99, Laborers International Union of North America, AFL-CIO, Local Union 271 ("Laborers") and the International Union of Operating Engineers, Local Union 57 ("Operating Engineers"), negotiated a special tunnel agreement ("STA"). The STA is a collective bargaining agreement covering the manufacturing and construction work performed by Shank at the Project. (JT. EX. 1).

Section 5 of the STA grants to Shank certain management rights. Among those management rights, the agreement provides that Shank "shall be *solely* responsible for managing performance of the work, including, but not limited to: deciding means, methods, and task schedules, for performing the work; hiring . . . applicants and employees; judging the numbers of employees required to perform any phase of the

work, [and] assigning the numbers of employees [Shank] considers necessary for any operation or crew." (JT. EX. 1, PAGE 2).

The STA provides in Section 6 that the three unions "are the sole and exclusive bargaining representatives of all persons employed to perform work covered by this STA, except the following class of persons: executives, superintendents, . . . ." (JT. EX. 1, PAGE 1). Foremen are not included within the category of persons excluded from the coverage from the agreement. In fact, "any person who is designated as a Foremen [is a person] . . . who [Shank] may request by name, and who the unions shall dispatch to Shank under the unions' referral and hiring practices. (JT. EX. 1, SECTION 6, PAGES 2-3). Such persons "dispatched to [Shank] in accordance with [the] STA shall be members of the Unions." (JT. EX. 3, SECTION 4, PAGE 2). Thus, foremen working for Shank are expressly included within the coverage of the STA, commonly referred to as the collective bargaining unit.

Section 7 of the STA provides that Shank "shall assign jurisdiction for the work." The STA contains a separate procedure for settlement of all jurisdictional disputes as follows:

> There shall be no strikes, work stoppages, or slow-downs, or other disruptive actively, arising from any jurisdictional dispute. Should a jurisdictional dispute arise, the dispute shall be settled by the Union's themselves, and [Shank] shall be bound by that settlement. No settlement, however, shall result in [Shank] having to employ a double crew, or to use more employees then the minimum required to perform the work, nor shall it result in [Shank] having to use employees who are not qualified to perform the work. If the Unions cannot reach any settlement, [Shank's] original assignment shall remain in effect. (JT. EX. 1, PAGES 3-4).

The STA contains a grievance procedure in Section 11. This procedure is separate from the procedure in Section 7 for resolving jurisdictional disputes. The grievance procedure provides that "[a]ny dispute arising from performance of this STA, *except for a jurisdictional dispute*, or a violation of Paragraph 10 [the no-strike and no-lock out clause], shall be settled by the following three step procedure." (emphasis added). Section 11 allows unsettled grievances to be decided by arbitration. This section provides, however, "[t]he Parties agree that, in deciding the grievance, the arbitrator shall not have authority to change, add to, or delete from, the STA." (JT. EX. 1, PAGES 4-5). By its express terms, the STA excludes jurisdictional disputes from the type of disputes a party must submit to the grievance and arbitration procedure.

In 2004, Local 99 requested a meeting, complaining that employees other than Local 99 electricians were doing electrical work. A meeting under Section 7 of the STA was held on March 17, 2004. The attendees included Allen P. Durand, business manager for Local 99, Michael Sabatoni, business manager for the Laborers, Richard Houlihan, business manager for the Operating Engineers and M.L. Shank. Shank stated during this meeting that what Local 99 was calling "electrical work" was in fact not electrical work at all, and that the work in question did not require the skill of an electrician. (C-1, PAGES 1 AND 2; TR. 1, PAGES 13-15, TR. 2, PAGES 57-60). Shank also stated that the work had historically been performed in tunnels by members of the Laborers and Operating Engineers unions as incidental to performing their work. Shank gave the plugging and unplugging of electrical cords and pushing start-stop and breaker reset buttons on equipment as examples of the work in question. Based upon this position, Shank stated that it had assigned the work in question to the Laborers and Operating

Engineers as it fell within the jurisdiction of those unions. (C-1, PAGES 1 AND 2). The representatives of both the Laborers and the Operating Engineers unions agreed with Shank that the work described by Shank was not electrical work. They also agreed with and accepted Shank's assignment of the work to members of the Laborers and Operating Engineers unions. (C-1, PAGES 3 AND 4). Local 99 did not agree with the assignment.

Under Section 7 of the STA, this jurisdictional dispute proceeding was resolved because the unions were unable to reach a settlement among themselves. Where the unions cannot reach a settlement, Shank's original assignment "shall remain in effect." (JT. EX. 1, PAGES 3-4).

Local 99, not content with the outcome in the jurisdictional dispute proceeding under Section 7 which it initiated and in which it fully participated, almost a year later raised the identical dispute disguised as a grievance under Section 11 of the STA. (JT. EX. 2). The grievance and demand for arbitration filed in February 2005, involved the same kind of work resolved in the previous dispute, the pushing of a "breaker reset switch." (JT. EX. 2 AND 3). Both clearly stated that the dispute involved individuals performing electrical work "other than members of Local 99 IBEW." In this grievance, like the prior jurisdictional dispute proceeding under Section 7 in 2004, Local 99 was complaining that a foreman and member of the Operating Engineers union [Mr. Umling], had pushed a breaker reset button. (TR. 2, PAGES 57-60). As shown, foremen were specifically covered by the collective bargaining agreement and were members of the collective bargaining unit covered by the STA. Because the foreman here was covered by the STA and was a member of the collective bargaining unit, Shank paid fringe benefit contributions for hours worked by the foreman pursuant to the requirements of the STA.

(C-2, PAGES 1 THROUGH 4). Therefore, Local 99's demand for arbitration was over a dispute already resolved in the jurisdictional dispute proceeding under Section 7 of the STA.

The result is that Local 99 demanded that Shank "assign particular work to employees in a particular labor organization [Local 99] or in a particular trade, craft or class rather than to employees in another labor organization [Operating Engineers] or in another trade, craft or class." As we show below, this is a classic jurisdictional dispute within the meaning of the National Labor Relations Act.

B. The Arbitration Proceedings Under Section 11.

The arbitration under Section 11 was conducted on two separate days. The first hearing day was May 6, 2005. (TR. 1). Shank repeatedly stated at the first hearing that Local 99's grievance was a jurisdictional dispute and was specifically excluded from those matters which could be arbitrated under Section 11 of the STA. Local 99 agreed with Shank: "[J]urisdictional disputes are excluded from the arbitration clause and would, therefore, be beyond the jurisdiction of the arbitrator to hear." (TR. 1, PAGE 7, LINES 18-21; SEE ALSO TR. 1, PAGE 5, LINES 6-19; PAGE 6, LINES 13-25; PAGE 9, LINES 12-16). Later, Local 99 again agreed with Shank: "[T]he parties are in agreement that if this is a jurisdictional dispute, that you [the arbitrator] don't have authority to hear it." (TR. 1, PAGE 12, LINES 22-25).

Shank expressly preserved its objection to the arbitrator determining whether he had the power to decide the case:

> [The dispute] is an issue of substantive arbitrability, which the collective bargaining agreement does not give the arbitrator the power to decide. [The dispute] is excluded from the jurisdiction of the arbitrator.

(TR. 1, AT 16, LINES 17-21).

In the face of Shank's objection to the arbitrator deciding the dispute and preservation of its objection to the arbitrator deciding substantive arbitrability, the arbitrator nevertheless found that the grievance was arbitrable. The arbitrator, perfectly singing from the same sheet of music as Local 99 counsel, improperly recharacterized the dispute as "a question of a member of management, a foreman, doing electrical work and an objection to that by the electricians." (TR. 1, PAGE 22, LINES 2-5). As we show below, this brazen attempt to redefine the nature of the dispute in order to avoid the express exclusion of jurisdictional disputes from the arbitration clause cannot be allowed to stand.

At the second hearing day, June 6, 2005, Shank again stated that it protested the arbitrator's decision to hear a jurisdictional dispute and that this was beyond the power of the arbitrator. Shank also stated that the agreement did not give the arbitrator authority to decide his own jurisdiction: "That's substantive arbitrability so we preserve that right to carry the matter further under either Rhode Island or federal law. We haven't waived that right by participating either in the first hearing or in this hearing." (TR. 2, PAGES 53, LINES 19-25, AND 54, LINES 1 THROUGH 6).

At the second hearing, Shank made it perfectly clear that this dispute was a jurisdictional dispute which arose under Section 7 of the STA. A dispute over what craft could perform the work in question is handled by the unions getting together and agreeing among themselves to a solution. But, if the unions cannot agree, as here, Shank's original assignment shall remain in effect. (TR. 2, PAGE 58).

Shank testified that at the Section 7 meeting in 2004, Shank explained what was and what was not electrical work. Although Local 99 disagreed with Shank, the other two unions (Laborers and Operating Engineers) agreed with Shank. Shank listed a number of tasks such as pushing buttons to start motors, resetting breakers, plugging in electrical cords, unplugging electrical cords, and other tasks. The jurisdictional dispute over this work was resolved in favor of Shank's assignment in the Section 7 jurisdictional dispute proceeding held in March 2004. Shank correctly noted that Local 99 was simply trying to get a second bite of the apple under the guise of a Section 11 grievance that it lost in the earlier Section 7 jurisdictional dispute proceeding. (TR. 2, PAGES 59-60). All of this testimony is supported by the exhibits admitted at the second hearing. (C-2, PAGES 1 THROUGH 4).

It is abundantly clear that the work of resetting a breaker was one of the tasks resolved in the previous Section 7 jurisdictional dispute proceeding. (TR. 2, PAGE 59).

C. The Arbitrator's Award.

On October 10, 2005, the arbitrator issued an award received by Shank on October 13, 2005. The award confirms that Shank raised an objection to the arbitrator hearing the case on the grounds that substantive arbitrability is not to be determined by the arbitrator, but rather, by a court. (AWARD, PAGE 6). The arbitrator found that purported broad language in the arbitration clause gave him implied authority to determine whether or not a particular matter was intended to be arbitrated by the parties. The arbitrator stated that if Shank wanted to seek a judicial interpretation of an arbitration clause, it should have gone to court in the first instance. (AWARD, PAGE 7). The arbitrator concluded that the dispute was not a jurisdictional dispute. Rather, it was a

dispute concerning "a member of management" performing electrical work. (Award, PAGE 8). As a remedy, although the work in question took literally a matter of seconds to perform, the arbitrator ordered Shank to "forthwith assign a licensed electrician to the third shift" and pay back pay and benefits for a third shift electrician retroactive to August 21, 2005. (TR. 2, PAGE 9).

D. The Proceedings In This Court.

On January 13, Shank filed a complaint to vacate the arbitration award in the Rhode Island Superior Court. Local 99 removed the case to this Court. After a conference with the Court, Shank filed an amended complaint under Section 301. Local 99 filed an answer and counterclaim to confirm the arbitration award. The Court set the date for the filing of this motion to vacate on May 31, 2006.

## III.

## LEGAL ARGUMENT

A. The Law To Be Applied.

In *Textile Workers v. Lincoln Mills,* 353 U.S. 448 (1957), an action was brought under Section 301 to enforce an arbitration clause in a collective bargaining agreement. The Supreme Court addressed the substantive law to be applied in Section 301 actions. The Court stated:

> We conclude that the substantive law to apply in suits under § 301(a) is federal law which the courts must fashion from the policy of our national labor laws.
>
> * * *
>
> Federal interpretation of the federal law will govern, not state law . . . But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy . . . Any

> state law applied, however, will be absorbed as federal law and will not be an independent source of private rights.

*Id.* at 456-57. Thus, the substantive law to be applied here is federal law under Section 301.

B. <u>This Court Must Decide Substantive Arbitrability—Not An Arbitrator</u>.

More than forty-five years ago, the Supreme Court decided three cases defining the role of labor arbitrators and the courts. *Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); and *Steelworkers v. Ent. Wheel and Car Corp.*, 363 U.S. 593 (1960). These cases have commonly become known as the *Steelworkers Trilogy*. The *Steelworkers Trilogy* laid down basic principles of labor arbitration law from which the Supreme Court has never wavered. As pertinent to this case, the *Steelworkers Trilogy* set forth the following rules:

1. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

2. "[T]he question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is *undeniably* an issue for judicial determination. Unless the parties *clearly and unmistakably* provide otherwise, the question of whether the parties agreed to is to be cited by the court, not the arbitrator."

3. "Where one of the parties to the collective bargaining agreement contends that the agreement gives an arbitrator the authority to determine questions of whether a collective bargaining agreement creates a duty of the parties

> to arbitrate a particular grievance, the party making that assertion bears "the burden of a *clear* demonstration of that purpose."

*Warrior & Gulf*, 363 U.S. at 582-83 n. 7 (emphasis added).

Taken together, these principles establish that: (1) only a court may determine whether a particular grievance is arbitable, referred to as "substantive arbitrability," (2) the only exception to this rule is where "the parties clearly and unmistakably provide otherwise," and (3) where a party contends that the agreement gives the arbitrator the power to decide whether a grievance is arbitable, that party must bear the burden of "a clear demonstration of that purpose."

All of these rules governing a court's determination of substantive arbitrability were restated in *AT& T Tech., Inc. v. CWA,* 475 U.S. 647 (1986). *AT&T* is particularly pertinent because, as in the present case, the collective bargaining agreement in *AT&T* contained an exception in the arbitration clause for disputes "excluded from arbitration by other provisions of this contract." *Id.* at 644-45. In another provision of the *AT& T* contract, it provided that the employer was free to exercise certain management functions. In *AT&T*, the union filed a grievance over the employer's decision to lay-off certain employees and sought to arbitrate the dispute. The employer refused.

The Supreme Court reversed the lower court's order to arbitrate the dispute, even though the collective bargaining agreement contained a broad arbitration clause. In holding that it was error to order the parties to arbitrate the substantive arbitrability question, the Court said: "It is the court's duty to interpret the agreement and to determine whether parties intended to arbitrate grievances." *Id.* at 651.

Given the express exclusion of grievances "excluded from arbitration by other provisions of the contract," the Supreme Court held that it is a *court's* duty to interpret the agreement and determine whether the parties intended to arbitrate grievances concerning lay-offs. The Supreme Court framed the issue as whether, because of express exclusions or other forceful evidence, the dispute over the interpretation of the lay-off provision is not subject to the arbitration clause. That issue, the Supreme Court held, should have been decided by the lower district court, and should not have been referred to the arbitrator. *Id.* at 651-52.

To the same effect is the earlier decision in *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962), *overruled, in part, on other grounds*, which the Supreme Court relied upon in *AT&T*. In *Atkinson*, a union attempted to require an employer to arbitrate the employer's claim for damages resulting from a breach of a no-strike clause. The grievance and arbitration clause imposed a "critical limitation" on the types of disputes that were required to be arbitrated. The clause stated that "local arbitration boards shall consider only individual or local employee or local committee grievances arising under the application of the currently existing agreement." The court noted that "[t]here is not a word in the grievance and arbitration article providing for the submission of grievances by the company. Instead, there is the express, flat limitation that arbitration boards should consider only employee grievances." *Id.* at 243. Because of this express limitation on the arbitration provision of the agreement, the Supreme Court held that the employer was not required to arbitrate its claim for damages.

The First Circuit follows the principles set forth in *AT&T* and *Atkinson*. *See, e.g., Int'l Ass'n of Machinist and Aero Space Workers v. Caribe General Electric Products,*

*Inc.*, 108 F.3d 422, 423 (1st Cir. 1997) (*AT&T* holds that unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator). Thus, any presumption in favor of arbitrability is overcome where the collective bargaining, as here, contains "an express provision excluding a particular grievance from arbitration." *Steelworkers v. Lukens Steel Co.*, 969 F.2d 1468, 1475 (3d Cir. 1992); *General Drivers, Warehousemen and Helpers, Local Union No. 509 v. Ethyl Corp*, 68 F.3d 80, 84 (4th Cir. 1995) (express exclusion of an issue from arbitration clause overcomes presumption of arbitrability); *Contra Costa Legal Assistance Workers v. Contra Costa Legal Services Found.*, 878 F.2d 329, 330 (9th Cir. 1989) (exclusion of certain issues from the arbitration clause is evidence of a purpose to exclude a claim from arbitration and rebuts the presumption of arbitrability).

In *G.T. Schjeldahl Co., v. Local Lodge 1680 of District Lodge No. 64*, 393 F.2d 502 (1st Cir. 1968), the First Circuit, after recognizing the policy favoring labor arbitration, nonetheless rejected any presumption favoring arbitration where the arbitration clause was "very clearly in terms limited to employee grievances" only, and did not require arbitration of an employer's damage claim for violation of a no-strike clause. *Id.* at 504-05.

In the present case, the parties have expressly excluded a "jurisdictional dispute" from arbitration. As Justice Breyer stated when on the First Circuit, where a contract contains explicit language, "the contract means what it says * * * [g]iven . . . the difficulty one has imagining how one could use the English language to state [the matter]

more clearly." *S.D. Warren Co. v. Paperworkers Local 1069,* 846 F.2d 827, 828 (1st Cir. 1988).

Moreover, the arbitration clause in this case is not even the type of broad arbitration clause found in cases such as *AT&T.* The limited commitment to arbitrate in this case is readily apparent when the Court compares the clause in this case, "any dispute arising from performance of this STA, except for a jurisdictional dispute, . . ." (JT. EX. 1, PAGE 4), with the clause in *AT&T* which provided for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder, 475 U.S. at 645 n. 1."

Here, the arbitrator completely ignored the principles contained in *AT&T* and the *Steelworkers Trilogy.* The arbitrator mistakenly concluded that the arbitration clause gave him the authority to decide substantive arbitrability. The arbitrator failed to realize that under *AT&T,* it takes nothing less than a clear and unmistakable grant by the parties to transfer substantive arbitrability questions from the court to an arbitrator.

It is undisputed that no provision of the STA expressly provides that the arbitrator has the authority to determine arbitrability (his own jurisdiction) or to recharacterize the nature of a dispute.

C. Shank Properly And Explicitly Preserved The Issue Of Substantive Arbitrability And Did Not Submit That Issue To The Arbitrator.

As shown, Shank explicitly preserved the issue of substantive arbitrability on numerous occasions throughout this proceeding. When properly preserved, there is no waiver of the right to a court determination of substantive arbitrability.

In *Tejidos De Coamo, Inc. v. Int'l Ladies Garment Workers Union,* 22 F.3d 8 (1st Cir. 1994), the First Circuit recognized that a valid objection to jurisdiction of the

arbitrator to decide substantive arbitrability must be decided by a court before any arbitration award can be enforced. The court held that any suggestion that an employer waives an explicitly asserted jurisdictional objection to an arbitrator determining substantive arbitrability by defending on the merits is mistaken. *Id.* at 14, *citing IAM Lodge, 1777 v. Fansteel, Inc.*, 900 F.2d 1005 (7th Cir. 1990), *cert denied,* 498 U.S. 851 (1990).

In *Fansteel*, the Seventh Circuit upheld the district court's decision vacating an arbitration award concerning a matter the parties had explicitly reserved for the determination of agencies, such as the National Labor Relations Board, or courts rather than grievance arbitrators. In that case, the employer, in unambiguous language, advised the arbitrator and the union of its objections to substantive arbitrability being decided by the arbitrator. Nevertheless, the employer proceeded forward with the arbitration hearing on the merits. The court held that the employer's "explicit reservation of rights complies with [case law] and in our opinion allows the [employer] to participate in an arbitration hearing and reserves the [employer's] right to challenge the arbitrator's authority in a subsequent court proceeding." 900 F.2d at 1009. The court stated that this approach conforms with both case law and the views of commentators in the area of labor arbitration.

One of the cases relied on in *Fansteel* was *R.W. Granger & Sons, Inc.* v. *Eastern Massachusetts Carpenters,* 686 F.Supp. 22 (D. Mass. 1988). There, the employer participated in the arbitration hearing on the merits of the dispute, but "explicitly preserved its right to challenge jurisdiction in federal court in the event of an adverse decision on the merits." *Id.* at 25. The employer went forward on the merits of the

dispute as to whether the employer was bound to a collective bargaining agreement with the union. On these facts, the court held:

> [P]articipation in an arbitration hearing on the merits does not constitute a waiver of the right of review by the federal courts on the issue of arbitrability if the respondent in arbitration explicitly preserves its challenge to jurisdiction.

*Id.* at 26 (citations omitted).

Here, the arbitrator, over Shank's objection and preservation of the substantive arbitrability question for court determination, decided that the grievance was arbitrable. The arbitrator's absurd –and erroneous–basis for proceeding forward on this issue was that Shank should have first sought to obtain a declaratory judgment that the grievance was not arbitrable. This astonishing conclusion by the arbitrator flies in the face of all the well-established legal authority to the contrary.

D. Local 99's Grievance Is Not Arbitrable.

1. The Grievance Involves A Jurisdictional Dispute.

The grievance submitted in this case and the demand for arbitration, on their face, set forth the purest form of a jurisdictional dispute under the National Labor Relations Act. These documents describe the dispute as: "electrical work [is being] performed by individuals other than members of Local 99 IBEW." (JT EX. 3, PAGE 1). The individual referred to, a Shank foremen, is covered by the collective bargaining agreement and is a member of another labor organization which is party to the STA, the Operating Engineers. The grievance and demand for arbitration fall squarely within the description of a jurisdictional dispute under section 8(b)(4)(D) of the Act, 29 U.S.C. § 158(b)(4)(D).

Indeed, Local 99 concedes that this is a jurisdictional dispute as it initially and properly invoked the agreed-upon procedure for resolution of jurisdictional disputes. It only invoked the grievance procedure under Section 11 when it failed to achieve a change in Shank's work assignment through the Section 7 jurisdictional dispute resolution procedure. The fact that Local 99 seeks back pay under Section 11 in lieu of the work assignment does not change the fact that the current dispute is a jurisdictional dispute. Under numerous National Labor Relations Board decisions, a grievance seeking back pay in lieu of a work assignment falls squarely within the definition of a jurisdictional dispute. *See, e.g., Northern California District Council of Laborers (W.B. Skinner)*, 292 NLRB 1035 (1989); *Tile, Marble, Terrazzo Finishers, Local 47-T (Grazzini Bros & Co.)*, 315 NLRB 520, 523 (1994).

Consistent with the description of a jurisdictional dispute under Section 8(b)(4)(D) of the Act, the grievance and demand for arbitration attempt to force or require Shank "to assign particular work to employees in a particular labor organization [Local 99] or in a particular trade, craft, or class rather than to employees in another labor organization [Operating Engineers] or in another trade, craft, or class." The arbitrator's inappropriate attempt to recharacterize the nature of the dispute as one between Local 99 and a "member of management" performing electrical work must be rejected. *Contra Costa Legal Assistant Workers*, 878 F.2d at 330 (arbitrator cannot recharacterize the nature of the dispute in order to avoid the principle that substantive arbitrability must be decided by a court, not an arbitrator).

"However the [arbitrator and union] phase [the] grievances they can make them no more than disputes [over a jurisdictional dispute]. Such disputes are expressly

excluded from the arbitration procedure." *District 50, Mineworkers v. Chris-Craft Corp.*, 385 F.2d 946, 950 (6th Cir. 1967); *Ethyl Corp.*, 68 F3d at 84 (party seeking arbitration cannot "renegotiate express exclusions" from arbitration clause "by simply claiming" that the grievance is really over a matter which is not excluded from arbitration).

There is another equally important reason why the grievance in this case is a non-arbitrable jurisdictional dispute. Local 99 initiated the jurisdictional procedure under Section 7 of the STA over this same issue, *i.e.*, members of other unions performing electrical work to the exclusion of members of Local 99. When this dispute arose, Local 99 voluntarily participated in a jurisdictional dispute proceeding under Section 7 of the STA. During that proceeding, all parties stated their positions as to whether certain work was electrical work that was required to be performed by members of Local 99 to the exclusion of members of the other two unions party to the STA. Both the Operating Engineers and the Laborers agreed with the position of Shank—the work in question was not electrical work, and it could be performed by members of Operating Engineers and Laborers. (C-1, PAGES 1 THROUGH 4). As shown, under the jurisdictional dispute process in Section 7 of the STA, where the unions are unable to reach a unanimous agreement concerning the assignment of work, Shank's assignment of the work stands.[2]

Local 99 cannot participate in the Section 7 jurisdictional dispute proceeding, and being dissatisfied with the result, simply recharacterize the nature of the dispute (with the

---

[2] The outcome of the jurisdictional dispute proceeding under Section 7 is really unimportant to this Court's determination of the substantive arbitrability question. By itself, the fact that the parties to the proceeding, particularly Local 99, participated in the jurisdictional dispute proceeding under Section 7 shuts the door on any claim that the dispute is not a jurisdictional dispute.

blessing of the arbitrator), and avoid the express exclusion of jurisdictional disputes in the arbitration clause.

2. The Dispute Is Not Arbitrable Because It Is Expressly Excluded From The Arbitration Clause.

In numerous post-*AT&T* cases, courts have consistently held that where the parties disagree whether a dispute is a jurisdictional dispute excluded from a contract's arbitration provisions, the court itself must decide the nature of the dispute and whether it is excluded from the arbitration clause. If so, arbitration must be denied.

It is entirely proper, indeed necessary, for this court to inquire into the facts giving rise to the dispute in order to determine whether the dispute is excluded from the arbitration clause of the agreement. *AT&T,* 475 U.S. at 652, "When, as in this case, a subject is specifically excluded from the arbitration procedure, [court's] are not free to ignore the plain wording of the agreement between the parties." *Chris-Craft Corp.*, 385 F.2d at 949-50. A determination of substantive arbitrability "necessarily entails some limited inquiry into the factual circumstances surrounding the" dispute. *Id.* at 950. The determination here does not require this Court to decide the merits of the grievance, *i.e.*, whether the work is the work of the electrician (Local 99), or, instead, the work of the Operating Engineers. *Chris-Craft Corp,* 385 F.2d at 950.

In *Operating Engineers v. J.S. Alberici Constr. Co.*, 936 F.2d 390 (8th Cir. 1991), the court examined the underlying facts to determine whether a dispute was an arbitrable subcontracting dispute or, instead, a jurisdictional dispute that was expressly excluded from arbitration. Although the collective bargaining agreement contained a broad arbitration clause requiring arbitration of all "grievances, disputes or claims" arising with respect to "the enforcement or interpretation" of any of the terms of "the agreement,"

jurisdictional disputes, like under the STA, were to be resolved by a separate procedure for settlement of jurisdictional disputes. After reviewing the facts, rather than referring the question of whether the grievance was a jurisdictional dispute to an arbitrator, the court decided itself that the dispute should not be resolved under the arbitration clause. The court stated that the "nub of the dispute" was "who should have a right to operate the compressors." The court held that the dispute must be resolved under the separate jurisdictional dispute provisions of the collective bargaining agreement, not the arbitration clause. *Id.* at 392.

To the same effect is *Schnabel Foundation Co. v. Operating Engineers, Local 542,* 410 F.Supp.2d 410 (E.D. Pa. 2006). As in *Alberici*, the collective bargaining agreement provided for arbitration of disputes, but it contained a separate arbitration clause for jurisdictional disputes. The union filed a grievance requesting contractual damages because the work in question was assigned to another union. The court reviewed the contract, determined that the dispute was a jurisdictional dispute over the assignment of work and refused to order arbitration of the dispute under the general arbitration clause.

Likewise, in *Local 13, Int'l Federation of Professional and Technical Engineers, AFL-CIO v. General Electric Co.*, 531 F.2d 1178 (3d Cir. 1976), a work assignment dispute arose when the employer assigned work to be performed to employees in another one of its plants. The arbitration clause in the agreement specifically stated that matters involving "the assignment of work" . . . "shall not be subject to arbitration." Although the district court ordered that the parties submit the work assignment dispute to arbitration, the Third Circuit disagreed. The court determined, "as a matter of law," that

an interpretation of the arbitration clause showed that there was an "explicit exclusion of assignment of work from arbitration." *Id.* at 1184. On this basis, the court refused to order arbitration of the dispute.

The result is no different where an agreement excludes other disputes from arbitration. Thus, in *Ethyl Corp.*, 68 F.3d at 84 (4th Cir. 1995), the court stated that where "the agreement specifically excludes a subject from arbitration, courts are not free to ignore the plain wording of an agreement and must decline to compel arbitration," citing *Chris-Craft, supra.* The arbitration clause specifically stated that it did not apply to "matters affecting wages and rates of pay." The grievance was filed by the union over a dispute involving job promotion tests. Although the parties disagreed as to whether the grievance involved wages and rates of pay, the court reviewed the facts concerning the nature of the dispute and determined that the issue of job promotion tests fell squarely within the express exclusion in the arbitration clause.

The Fifth Circuit in (*Local 4-449, Oil, Chemical and Atomic Workers Union v. Amoco Chemical Corp.*, 589 F.2d 162 (5th Cir. 1979) (*per curiam),* reached the same result. The arbitration clause there unambiguously excluded grievances dealing with sickness and disability benefits. The Fifth Circuit affirmed the district court's denial of arbitration. To hold otherwise, the district court stated, would render the express exclusion "totally meaningless." *Id.* at 164.

Consistent with these authorities, this Court should give plain meaning to the express exclusion of jurisdictional disputes from the arbitration clause and find that the union's grievance is not arbitrable. Any other result would render the words, "except for a jurisdictional dispute," completely meaningless.

E. <u>The Arbitrator's Remedy Does Not Draw Its Essence From The Agreement</u>.

The grievance in this case involved the task of pushing a "breaker reset button," a task taking only seconds to perform. Yet, the arbitrator awarded back pay and benefits for a third shift electrician who was never employed, and adding insult to injury, ordered Shank to assign a licensed electrician to the third shift for all future work. However, the collective bargaining agreement gave Shank the *sole* right to assign "the numbers of employees it considers necessary for any operation or crew" and "judge" the number of employees required to perform any phase of the work." In addition, the parties specifically agreed in the arbitration clause that "the arbitrator shall have no authority to change, add to, or delete from, the STA."

In labor arbitration cases, the standard for determining whether the arbitrator has exceeded his power is based on the "essence test." This test was first set forth in the *Steelworkers Trilogy* where it was held:

> An arbitrator is confined to an interpretation and application of the collective bargaining agreement. He does not set to dispense his own brand of industrial justice. He may look of course for guidance from many sources, yet his award is legitimate only as long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Enterprise Wheel,* 363 U.S. at 597. When an arbitrator ignores the plain language of the agreement, the award fails to draw its essence from the collective bargaining agreement. In such cases, the award cannot be enforced.

The "essence test" is amply illustrated in decisions of the First Circuit. In *Georgia-Pacific Corp. v. Local 27, Paperworkers,* 864 F.2d 940(1st Cir. 1989), the

collective bargaining agreement contained a disciplinary provision that allowed employees to be terminated for cause, but listed a number of offenses that could result in immediate termination without prior progressive discipline. One of those grounds was dishonesty.

The arbitrator's decision acknowledged that the employee was discharged for dishonesty. However, the arbitrator found that the company did not have just cause to discharge the employee and ordered reinstatement without back pay.

The First Circuit examined the collective bargaining agreement and found that the collective bargaining agreement's language was clear and unambiguous. Once dishonesty is established, no further showing was required to terminate an employee. The First Circuit found that the arbitrator was barred from pursuing any further inquiry regarding the justification for the employee's termination. Such additional probing constituted ignoring the plain language of the contract. 864 F.2d at 945. The First Circuit ordered that the arbitration award be vacated.

Similarly, in *S.D. Warren Co. v. Paperworkers, Local 1069,* 845 F.2d 3 (1st Cir. 1988), the collective bargaining agreement gave the employer the "sole" right to discharge employees for proper cause. The agreement also provided that "the arbitrator shall have no power to render a decision which in any way modifies any provision of the agreement." The agreement provided that "causes for discharge" include violation of the rule prohibiting possession of drugs. *Id.* at 6.

In spite of these plain, unambiguous words, the arbitrator determined that employee discharges for admittedly violating the no possession rule were not justified

and substituted suspension instead of the discharge penalty stated in agreement. The First Circuit refused to enforce the award:

> [T]he contract plainly states that the company has the sole right to discharge employees for the violation which admittedly occurred. In the face of the contract's unambiguous language to this effect, it cannot be said that the arbitrator even "arguably constru[ed] or appl[ied] the contract." . . . By substituting the arbitrator's own "brand or industrial justice" over that established in the contract, the arbitrator engaged in the proscribed modification of the agreement.

*Id.* at 8.

So too here. Under the management rights clause, Shank is "*solely responsible*" for "hiring, . . . judging the number of employees required to perform . . . the work, [and] assigning the number of employees [Shank] considers necessary for any operation or crew . . . ." (JT. EX. 1, SECTION 5, PAGE 3).The agreement also provided that the arbitrator has no "authority to change, add to, or delete" provisions of the STA. (JT. EX. 1, SECTION 11, PAGE 5).

By ordering back pay for several months, and the assignment of a full time electrician on all future work for a single incident taking seconds to perform, the arbitrator completely ignored Shank's sole discretion to decide when it needed an electrician to perform the work. This effectively deleted Shank's sole responsibility for deciding how to man the job. The award "ignored the plain language of the contract . . . [A]n arbitrator does not have unfettered discretion. He may not impose a remedy which directly contradicts the express language of the . . . agreement." *Poland Spring Corp. v. United Food and Chemical Workers Int'l Union, AFL-CIO, Local 1445,* 314 F.2d 29, 34-35 (1st Cir. 2002), *cert. denied,* 540 U.S. 818 (2003), quoting *Georgia –*

*Pacific Corp., supra, cert. denied,* 540 U.S. 818 (2003). Under these circumstances, the award does not draw its essence from the collective bargaining agreement.

IV.

## CONCLUSION

The arbitration award must be vacated. The dispute was not arbitrable because it was excluded from the arbitration clause. The arbitrator had no power or authority to decide this issue. In the alternative, the arbitrator ignored the express language of the agreement giving Shank sole discretion to decide the number of employees required to man the job. The award fails to draw its essence from the agreement.

Plaintiff,
Shank/Balfour Beatty, A Joint Venture of M.L. Shank Company, Inc. and Balfour Beatty Construction, Inc.
By their Attorney:

Girard R. Visconti
Visconti & Boren Ltd.
55 Dorance Street
Providence, RI 02903
(401) 331-3800 (Telephone)
(401) 421-9302 (Facsimile)

**CERTIFICATION**

I, the undersigned, do hereby certify that I mailed a true copy of the within document on this 26th day of May, 2006 to:

Gerard P. Cobleigh, Esq.
Cobleigh & Giacobbe
70 Jefferson Blvd.
Warwick, RI 02888

Carly Beauvais Iafrate, Esq.
129 Dyer Street
Providence, RI 02903

Susan Marfeo