# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SHANK/BALFOUR BEATTY, A Joint Venture of M.L. SHANK COMPANY, INC., and BALFOUR BEATTY CONSTRUCTION, INC. | : | C.A. No.: 06-43ML |
| v. | : | |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 99 a/k/a/ IBEW LOCAL 99 | : | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD

Plaintiff, Shank/Balfour Beatty ("Shank") responses to defendant's motion to confirm the arbitration award as follows:

I.

## INTRODUCTION

Defendant (Local 99) has failed completely to address the essential facts or the controlling law cited by plaintiff (Shank). As a result, the essential facts stand undisputed and the controlling case law cited by Shank is unchallenged.

Rather than address the controlling facts and law, Local 99 attempts to cause confusion concerning the merits of the dispute. As this Court is aware, it should not decide the merits of the dispute. Instead, this Court should examine only those facts which are necessary to determine whether the grievance filed by Local 99 is arbitrable under the collective bargaining agreement of the parties.

Accordingly, Shank's motion to vacate the arbitration award should be granted and Local 99's motion to confirm must be denied.

II.

## MATTERS THAT ARE NOT DISPUTED BY LOCAL 99

The following facts and controlling law essential to this Court's determination of substantive arbitrability are undisputed and unchallenged:

1. Section 7 of the Special Tunnel Agreement ("STA") defines the jurisdiction of the three unions party to the STA. It provides that Shank "shall assign jurisdiction for the work" and then proceeds to define the jurisdiction for each union,

including Local 99. "Should a jurisdictional dispute arise," *i.e.*, a dispute over the manner in which Shank "assign[ed] jurisdiction for the work," Section 7 of the STA describes a procedure for resolution of the jurisdictional dispute. (SHANK MEMORANDUM IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD ("SHANK MEMO") AT 4).

2. When a dispute over Shank's "assign[ment of] jurisdiction for the work" arose before the instant dispute, Local 99 correctly processed that dispute through the Section 7 jurisdictional dispute process. When the three unions could not agree to the assignment demanded by Local 99, Shank's original assignment remained in effect pursuant to the Section 7 procedure. (SHANK MEMO AT 5-6).

3. Donald Umling, the individual who performed the work in dispute, was a member of Operating Engineers, Local Union 57. Umling was a foreman, which is a classification expressly covered by the STA. Thus, Umling was a collective bargaining unit employee. (SHANK MEMO AT 4).

4. The management rights clause contained in Section 5 of the STA states that Shank "shall be *solely* responsible for managing performance of the work, including, "judging the numbers of employees required to perform any phase of the work, assigning the numbers of employees it considers necessary for any operation or crew." (SHANK MEMO AT 3-4).

5. There is not one word in Section 7 of the STA that in any way limits the Shank's management right under Section 5 of the STA to judge the numbers of employees required to perform any phase of the work or assign the numbers of

employees Shank considers necessary for any operation or crew. (SHANK MEMO AT 3-4).

6. Shank explicitly and repeatedly preserved its objection to the arbitrator determining substantive arbitrability. (SHANK MEMO AT 7-8).

7. It is proper in an arbitration proceeding for either party to preserve its objection to the arbitrator deciding substantive arbitrability, *i.e.*, whether the parties agreed to arbitrate a particular dispute under the arbitration clause, and then proceed to participate in the merits of the dispute. (SHANK MEMO AT 15-17).

8. Where the issue of substantive arbitrability has been properly preserved for court review, "the court conducts a *de novo* review of the question of substantive arbitrability." (LOCAL 99 MEMO AT 9).

9. A court must decide substantive arbitrability, not an arbitrator. (SHANK MEMO AT 11-13).

10. An arbitrator may not determine substantive arbitrability unless the parties "clearly and unmistakably" provide otherwise. When a party (like Local 99) contends that the agreement gives the arbitrator the power to decide substantive arbitrability, that party must bear the burden of "a clear demonstration of that purpose." (SHANK MEMO AT 11-12).

11. A jurisdictional dispute is expressly excluded from disputes which are arbitrable under Section 11 of the STA. Any presumption in favor of arbitrability is overcome where the collective bargaining agreement, like the STA, contains "an express provision excluding a particular grievance from arbitration." (SHANK MEMO AT 14).

12. Neither a party nor an arbitrator can recharacterize the nature of the dispute in order to avoid the rule that substantive arbitrability must be decided by a court or "renegotiate express exclusions" from the arbitration clause "by simply claiming" that the grievance is really over a matter which is not excluded from arbitration. (SHANK MEMO AT 18-19).

13. Although is it not proper for a court to delve into the merits of a dispute, it is proper, indeed necessary, for a court to inquire into the facts giving rise to the dispute in order to determine whether the dispute is excluded from the arbitration clause of the agreement. A determination of substantive arbitrability "necessarily entails some limited inquiry into the factual circumstances surrounding the" dispute. (SHANK MEMO AT 20).

14. By Local 99's own admission, if the current dispute is a jurisdictional dispute, "no arbitration is permitted under the STA." (LOCAL 99'S MEMO AT 5, FN. 3).

## III.

## ARGUMENT

### A. The Standard of Review is *De Novo*.

When the Court examines the issue of whether the parties in this case have agreed in the contract that a particular grievance is arbitrable ("substantive arbitrability), the court decides this issue *de novo*. "It is the court's duty to interpret the agreement and to determine whether parties intended to arbitrate grievances." *AT&T Tech., Inc. v. CWA*, 475 U.S. 647, 651 (1986). Local 99 admits as much. (LOCAL 99'S MEMO AT 9).

### B. The Court, Not the Arbitrator, Must Decide Whether the Dispute is Arbitrable.

Here, the arbitration clause contains an express exclusion of "a jurisdictional dispute." Thus, only the court may determine whether a particular grievance is arbitrable.

*AT&T* at 651. Because there is an express exclusion of a jurisdictional dispute from the arbitration clause, any presumption favoring arbitration is rebutted. (SHANK MEMO AT 13-14).

Local 99 claims that the STA gives the arbitrator the authority to decide substantive arbitrability. However, Local 99 has submitted no evidence or case authority demonstrating that "the parties clearly and unmistakably provide[d]" that the arbitrator, not a court, should decide arbitrability. Where a party contends that the arbitrator has the power to decide whether a grievance is arbitrable, that party must bear the burden of "a clear demonstration of that purpose." (SHANK MEMO AT 11-12). Local 99 has failed to meet this burden.

C. <u>Shank Properly and Expressly Preserved Substantive Arbitrability and Did Not Waive this Position by Going Forward on the Merits</u>.

Local 99 does not quarrel with *Tejidos de Coamo, Inc. v. Int'l Ladies Garment Workers Union*, 22 F.3d 8 (1st Cir. 1994). In adopting the Seventh Circuit's decision in *IAM Lodge, 1777 v. Fansteel, Inc.*, 900 F.2d 1005 (7th Cir. 1999), *cert denied*, 498 U.S. 851 (1990), the First Circuit endorsed the well-established principal that "participation in an arbitration hearing on the merits does not constitute a waiver of the right of review by [a court] on the issue of arbitrability where a party explicitly preserves its challenge to jurisdiction." (SHANK MEMO AT 17).

Instead, Local 99 relies on an unpublished decision from the Western District of New York which in fact approves the holding in *Fansteel* and is completely distinguishable from the instant case. *Freight Drivers Local No. 375 v. Kingsway Transport, Inc.*, 1992 WL 281379 (W.D. N.Y. 1992). *Kingsway* states:

> Thus, in order to reserve the issue of arbitrability . . . for an initial—*i.e.*, a *de novo*—determination, a party need only raise a timely objection to such. It then may proceed to the merits of the grievance without thereby waiving the right to challenge the arbitrability of such in court."

*Id.* at * 1.

Equally as important, in *Kingsway,* the employer stated that it was reserving "arbitral jurisdictional—*i.e.*, the jurisdiction of the arbitration over the parties—while proceeding with a hearing on the merits of 'substantive arbitrability'—*i.e.*, the question whether a particular grievance comes within the arbitration clause of the collective bargaining agreement." *Id.* at * 3.

Here, Shank preserved the latter, *i.e.*, whether the dispute falls within the arbitration clause. *Kinsgway* clearly supports Shank's position, not Local 99's.

D. The Grievance is a Jurisdictional Dispute.

Local 99's grievance and demand for arbitration state that "electrical work [is being] performed by individuals other than members of Local 99 IBEW." The individual referred to is Mr. Umling, a Shank foreman, which is admitted by Local 99. Shank has established that foremen are expressly covered by the collective bargaining agreement and that Mr. Umling was a member of the Operating Engineers, Local 57. When a similar dispute arose earlier involving the performance of work by Mr. Umling, Local 99 invoked the jurisdictional dispute procedure under Section 7 of the STA.

Local 99 argues that the instant dispute is not jurisdictional dispute because it does not involve two unions making a claim to the same work. Local 99 cites National Labor Relations Board decisions purporting to define a jurisdictional dispute.

Local 99 fails to address the fact that the STA, itself, defines a jurisdictional dispute. Section 7 of the STA defines a jurisdictional dispute as it covers and applies to a dispute resulting from a Shank work assignment which is to be resolved either by union agreement or disagreement. In the event of disagreement, Shank's assignment stands. This is exactly what the current grievance involves, *i.e.*, Local 99 disagrees with Shank's assignment of certain work which Shank determined is not the work of the electrician.

Whether Mr. Umling is a supervisor or not, the simple fact is that Local 99 is disputing Shank's work assignment under Section 7 of the STA, nothing more. The Court need look no further than the language of Section 7 of the STA which sets forth a definition of a jurisdictional dispute as one which involves Shank's assignment of work.

In any event, even if the Court were to accept Local 99's definition of a jurisdictional dispute as a dispute involving two unions claiming the same work, the dispute in this case fits Local 99's definition. The individual performing the work in dispute, Mr. Umling, was a foreman covered by the collective bargaining agreement. It is completely irrelevant whether Mr. Umling was a supervisor or not because foremen were expressly covered by the collective bargaining agreement. Where the parties have knowingly and voluntarily bargained for a collective bargaining agreement that covers supervisors, the National Labor Relations Board will find that the collective bargaining unit is appropriate and will protect the stability of the collective bargaining relationship. *Arizona Electric Power Cooperative, Inc. (IBEW, Local Union No. 570),* 250 NLRB 1132, 1133-34 (1980).

In addition, Mr. Umling was a member of Operative Engineers, Local 57. Where an employee who is represented by a union performs the work in question, this

constitutes a claim to the work. *Southwest Regional Council (Standard Drywall, Inc.)*, 346 NLRB No. 48, *Slip op* at 3 (2006); *Longshoreman ILWU Local 14 (Sierra Pacific Industries)*, 314 NLRB 834, 836 (1994) (performance of work by a group of employees is evidence of a claim for the work by those employees, even in the absence of an explicit claim). Thus, there is a claim to the work by Local 99 and Operating Engineers, Local 57.

As this dispute is a jurisdictional dispute within the meaning of Section 7 of the STA, Local 99 concedes that no arbitration of the current dispute is permitted under the STA. (LOCAL 99 MEMO AT 5, FN. 3)

E. <u>The Grievance is Not Arbitrable</u>.

Local 99 relies exclusively upon one decision of the Ninth Circuit Court of Appeals which has never been followed by the First Circuit or any other Circuit. *Huber, Hunt & Nichols, Inc. v. United Ass'n of Journeyman and Apprentices of Plumbing and Pipefitting Industry, Local 38,* 282 F.3d 746 (9th Cir. 2002). *Huber* is inapplicable and does not set forth the law to be applied in this case. *Huber* is distinguishable for many reasons, including:

1. In *Huber,* there were two collective bargaining agreements with inconsistent arbitration provisions. Here, there is only one collective bargaining agreement.

2. In *Huber,* the agreement found applicable did "not define 'jurisdictional dispute.'" In contrast, the STA defines a jurisdictional dispute as it covers disputes regarding Shank's assignment of work under Section 7 of the STA.

3. In *Huber,* the arbitrator under the project stabilization agreement was merely a gatekeeper who decided whether a grievance should be handled as a jurisdictional dispute under the project stabilization agreement, or, rather, under the local collective bargaining agreement. Here, no such structure exists as there is only one collective bargaining agreement.

4. The project stabilization agreement contained the broadest form of arbitration clause. It required arbitration of "all questions concerning the application or interpretation of the Agreement 'excluding a jurisdictional dispute.'" Here, the arbitration clause is limited in scope to "any dispute arising from performance of this STA, except for a jurisdictional dispute."

Given all of the dissimilarities between the agreements in *Huber* and the agreement in this case, *Huber* is inapplicable. *Huber* is also contrary to other authority cited by Shank which Local 99 completely ignores. (SHANK MEMO AT 20-22).

F. <u>The Arbitrator's Remedy Does not Draw its Essence from the Agreement</u>.

Local 99 argues that the arbitrator's remedy is appropriate because arbitrator's have broad discretion in formulating remedies. (LOCAL 99 MEMO AT 24). Local 99 also argues that Shank's management right to determine the number of employees it deems necessary to perform the work (Section 5 of the STA) is limited by Section 7 of the STA regarding the assignment of electrical work. However, Local 99 completely misses the fact that Section 7 contains no limitation at all upon Shank's management rights under Section 5 of the STA. Likewise, Section 5 of the STA stating Shank's management rights contains no language stating that it is limited by other sections of the agreement.

Local 99 fails to address the First Circuit authority which controls in this case. (SHANK MEMO AT 23-26). Under these cases, an arbitration award must be vacated where the arbitrator "ignored the plan language of the contract." Contrary to Local 99's contention, "an arbitrator does not have unfettered discretion. He may not impose a remedy which directly contradicts the express language of the . . . agreement." (SHANK MEMO AT 25).

Here, as part of its management rights, Shank had a program in place to perform electrical work on the third shift. Shank had a call-out program for electricians if in Shank's judgment an electrician was needed on the third shift. (T. 34-38).

When the arbitrator in his remedy decided that a full-time electrician was to be assigned to the third shift, the arbitrator was deciding that Shank's call-out program was insufficient and that he should substitute his own judgment for Shank's in deciding how electrical work should be accomplished on the third shift. This is particularly repugnant as the evidence demonstrates that the day shift and swing shift electricians were on site some twenty out of twenty-four hours, leaving only a four hour gap on the graveyard shift. (T. 34-38).

By substituting his judgment for Shank, who was "solely responsible" for "judging the number of employees required to perform the work, [and] assigning the number of employees [Shank] considered necessary for any operation or crew," the arbitrator ignored the plan language of the contract and therefore deleted Shank's management rights from the agreement.

IV.

CONCLUSION

Local 99 has failed to address the facts and controlling authorities established by Shank in this case. Instead, Local 99 has attempted to draw this Court into an examination of the merits of the dispute in an attempt to cloud the real issue in this case. The dispute in this case is a jurisdictional dispute as defined under Section 7 of the STA. Accordingly, this Court must vacate the arbitration award and deny Local 99's motion to confirm.

Plaintiff,
Shank/Balfour Beatty, A Joint Venture of M.L. Shank Company, Inc. and Balfour Beatty Construction, Inc.
By their Attorney:

Girard R. Visconti (#0566)
Visconti & Boren Ltd.
55 Dorance Street
Providence, RI 02903
(401) 331-3800 (Telephone)
(401) 421-9302 (Facsimile)

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that a copy of the foregoing has been furnished by U.S. Mail, postage prepaid, this 28th day of June, 2006 to:

Gerald P. Cobleigh, Esq.
70 Jefferson Blvd.
Warwick, RI 02888

Carly Beauvais Iafrate, Esq.
129 Dyer Street
Providence, RI 02903

Susan Mayes