UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SHANK/BALFOUR BEATTY, A Joint Venture of M.L. SHANK, COMPANY, INC., and BALFOUR BEATTY CONSTRUCTION, INC.

v. C.A. No. 06-43ML

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 99 a/k/a IBEW LOCAL 99

**Memorandum and Order**

This matter is before the Court on Plaintiff's, Shank/Balfour Beatty ("Shank"), motion to vacate an arbitration award. Defendant, International Brotherhood of Electrical Workers, Local 99 ("Local 99"), has filed an objection and a motion to confirm the arbitration award. Shank makes two arguments: (1) that the arbitrator erred by deciding substantive arbitrability, and (2) that if the arbitrator properly decided the arbitrability question the arbitrator's remedy should be vacated because it does not draw its essence from the collective bargaining agreement.

**I. Standard of Review**

The district court's authority to review an arbitrator's decision is "severely limited." Shaw's Supermarket Inc. v. United Food and Commercial Workers Union, 268 F. Supp. 2d 115, 121 (D.R.I. 2003). This review has been described as "extremely narrow and exceedingly deferential." Id. (internal quotation marks and citation omitted). A court should only set aside an arbitrator's decision in rare circumstances. Id. The question of whether parties agreed to

arbitrate a particular dispute, however, is for the court do decide; i.e., arbitrability is a question of law. Coady v. Ashcraft & Gerel, 223 F.3d 1 (1st Cir. 2000). The determination of whether the "subject matter of the underlying dispute is within the scope of an expressly limited arbitration agreement is an abitrability issue." Id. at 9 (internal quotation marks and citation omitted). Courts should "not assume that the parties agreed to arbitrate [the] arbitrability [of a dispute] unless there is clea[r] and unmistakabl[e] evidence that they did so." Id. (emphasis added) (internal quotation marks and citation omitted). With these principles in mind, this Court considers the question of the arbitrability of this dispute de novo.[1]

## II. Background

Shank is an employer engaged in interstate commerce and in an industry affecting commerce within the meaning of the National Labor Relations Act. See 29 U.S.C. § 152(6) and (7); 29 U.S.C. § 185(a). Shank's principal place of business is located in Rhode Island. Shank was awarded a manufacturing and construction contract by the Narragansett Bay Commission for the "Main Spine Tunnel and Ancillary Facilities" ("project"). Local 99 is a labor organization which represents employees in an industry affecting commerce. Its officers or agents are engaged in representing or acting for employee members in Rhode Island. Shank, Local 99, and two other unions, are parties to a collective bargaining agreement ("CBA").

[1]The parties agree that so long as the issue of arbitrability has been properly preserved this Court's standard of review of the arbitrability question is de novo. Shank made several objections to the arbitrator's jurisdiction during the arbitration hearing. Local 99 avers that, because Shank participated in the arbitration hearing, Shank submitted the issue of arbitrability to the arbitrator, waived any Court determination of substantive arbitrability, and as a consequence, the Court must now employ the normal deferential standard of review applicable to an arbitrator's decision. See generally Local 369, Utility Workers Union of America v. Boston Edison Co., 752 F.2d 1, 3 (1st Cir. 1984). The Court concludes that Shank did not waive "an explicitly asserted jurisdictional objection by defending on the merits." Tejidos de Coamo, Inc. v. International Ladies' Garment Workers' Union, 22 F.3d 8, 14 (1st Cir. 1994); R.W. Granger & Sons, Inc. v. Eastern Massachusetts Carpenters and Carpenters Local 275, 686 F. Supp. 22 (D. Mass. 1988).

In February 2005 a dispute arose between Shank and Local 99. Exhibit 3. Local 99 filed a grievance alleging that electrical work on the project was being done by unlicensed personnel other than members of its union. Id. The grievance noted several "applicable" CBA provisions, including paragraphs 5 ("Management Rights"), 7 ("Jurisdiction") and 11 ("Grievance Procedure"). Id. Shank responded by a letter dated February 11, 2005, noting that it had investigated the "complaint" and found no basis for processing a grievance under paragraph 11 or 7. Exhibit 5. Shank averred that the incident did "not involve a jurisdictional dispute under [paragraph] 7" of the CBA. Id. Shank described the incident which led to the "complaint" as an electrician "accidently" turning off the "master switch" for the electrical system and one of Shank's "supervisors, Donald Umling" ("Umling") noticing that the "master switch was 'off' and not locked out, so he turned the switch 'on', the electrical system came back on, and the crew was back in business." Id. Shank emphasized that "as far as we are concerned, this was an incident which by no means rises to the level of a jurisdictional dispute. . . ." Id. Shank concluded that the best solution was not to discuss "inapplicable grievances and jurisdictional disputes, but for our part to instruct . . . Umling to be more careful in his dealings with the electricians . . . [and] not to provoke possible confrontations. This we have done, and we would like to consider the incident closed." Id. Local 99, however, did not consider the incident closed and filed a demand for arbitration. Exhibit 4.

At the first day of the arbitration hearing, Shank, apparently switching course from its prior position, maintained that the grievance was, in fact, a jurisdictional dispute. Shank argued that the CBA provided that jurisdictional disputes were outside of the arbitrator's jurisdiction. Exhibit 1 at 6-7. Shank maintained that it could not be compelled to arbitrate a matter that it had

not agreed to arbitrate. Id. at 22-23. Shank alleged that the dispute was between the unions over a claim to work. Id. at 8-9, 16. Shank describes the dispute as one involving the "pushing" of an electrical "breaker reset button." Plaintiff's Memorandum of Law in Support of Motion to Vacate at 23. Local 99 contended that the issue was not a jurisdictional dispute but was a grievance about one of Shank's supervisors performing electrical work. Exhibit 1 at 8.

The arbitrator heard testimony from Patrick Brady ("Brady"). Brady, a journeyman electrician and union steward working on the project, testified that he had been a member of Local 99 for thirty-five years. Exhibit 6 at 5-6, 10. Brady stated that there were electricians scheduled to work on the project during the first and second shifts but no electricians were scheduled to work during the third shift. Id. at 7. Brady averred that Umling was a Shank supervisor who "direct[ed] the third shift crew . . . ." Id. at 23. In February 2005 Brady was notified that the "emergency system" was down. Id. at 30. Brady began checking electrical panels to attempt to locate the source of the problem. Id. at 30-31. At the same time,

> "Umling was . . . throwing breakers – randomly throwing breakers trying to get this . . . started while we were downstairs electrically trying to figure out what was wrong. All of a sudden he threw the breaker . . . which we had knocked off, inadvertently . . and this whole panel kicked in. . . . If one of us had been in that panel, they would have gotten electrocuted."

Id. at 31-32.

The arbitrator also heard testimony from Wolfgang Franzblau ("Franzblau"), a member of the operating engineer's union, Local 57, one of the other unions working on the project. Id. at 43-44. Franzblau also testified that Umling was "in charge of the third shift. . . ." Id. at 45. Franzblau averred that if an electrical problem arose Umling "would tell us he was going to take care of it and usually would. If he couldn't then an electrician would be called." Id. at 49.

Franzblau testified that on one occasion Umling was informed of an electrical fire and responded by "squirting" it with water. Id. Franzblau "took off. I told him that was electrical and it's probably not a good idea to use the hose. [Umling] said, I'll take care of it." Id. at 49.

Michael Shank ("Mr. Shank"), the managing partner of Shank, and the individual representing Shank at the arbitration hearing, also testified. Id. at 56. Mr. Shank averred that in early 2004 a jurisdictional dispute meeting took place among the three unions working on the project to clarify what was "electrical work." Id. at 57. Mr. Shank averred that at that meeting he "explained the kind of things that we didn't consider to be electrical work, work that did not require the skill of the electrician, that any craft could do it and that's how it had been historically done. . . . At that meeting the other [two unions] agreed with me." Id. at 57-58. Mr. Shank contended that "what was and what wasn't electrical work" had been previously decided as a result of the meeting and the jurisdictional dispute provision in the CBA. Id. at 58. Mr. Shank concluded that the 2005 grievance and the resulting arbitration hearing was Local 99's attempt to "reopen a jurisdictional issue that they lost . . . under the grievance procedure." Id. at 59. Mr. Shank presented letters from the business managers of the two other unions on the project which essentially endorsed Mr. Shank's position of what constituted electrical work as agreed to at the 2004 meeting. Id. at 60. Neither Umling or a representative from the other two unions on the project testified at the arbitration hearing.

The arbitrator found that the language in the CBA gave him the authority to determine substantive arbitrability and concluded that the grievance was not a jurisdictional dispute. Exhibit 11. The arbitrator determined that management was performing electrical work in violation of the CBA. As a remedy, the arbitrator ordered Shank to assign a licensed electrician

to the third shift and pay back pay and benefits for a third shift electrician retroactive to August 21, 2005.[2]

## III. Arbitrability

The first issue that the Court must review is the arbitrator's decision that the CBA gave him the power to decide arbitrability. The arbitrator determined that he had the power to decide arbitrability based upon the "broad language" of the CBA that "implied an authority to determine whether or not some particular matter was intended by the parties to be subject . . . to arbitration." Exhibit 11 at 7. As noted, courts should not assume parties agreed to arbitrate the question of arbitrability unless there is clear and unmistakable evidence that they intended to do so. Coady, 223 F.3d at 9. A presumption of arbitrability exits when there is an arbitration clause in the CBA. Senior v. NSTAR Electric and Gas Corp., 449 F.3d 206, 218 (1st Cir. 2006).

The CBA provides that "[a]ny dispute arising from the performance of this [CBA], except for a jurisdictional dispute, or a violation of Paragraph 10, [work stoppages and lockouts] shall be settled by" a three step grievance procedure. Exhibit 2 at ¶ 11 (emphasis added). The third step in the grievance procedure is arbitration. Id. The CBA specifically excludes jurisdictional disputes and disputes subject to paragraph 10 of the agreement from arbitration. Id. The CBA provides for a separate non-arbitration procedure for the settlement of jurisdictional disputes. "The presumption of arbitrability may be overcome if the collective bargaining agreement

[2]The CBA provides that "[n]o decision by the arbitrator may provide retroactivity beyond sixty (60) days." Exhibit 2 at ¶ 11. The arbitration award is dated October 10, 2005. Exhibit 11. The arbitrator calculated the sixty-day arrears date to be August 21, 2005. Id. It appears, however, that the arbitrator either made a mistake in calculating the date or overlooked a typographical error in the arbitration award because sixty days prior to the date of the award was actually August 11, 2005. Since neither party objected to the *calculation* of the sixty-day arrears date and the error benefits Shank and does not materially impact this Court's decision, the Court deems it insignificant.

contains an express provision excluding a particular grievance from arbitration." United Steelworkers of America v. Lukens Steel Co., 969 F.2d 1468, 1475 (3rd Cir. 1992) (internal quotation marks and citation omitted). Here, any presumption in favor of arbitration of the arbitrability question is overcome by the specific exclusions noted in the collective bargaining agreement. The parties have not clearly and unmistakably provided that the question of arbitrability of this dispute was to be decided by the arbitrator. See generally Coady, 223 F.3d at 9. The Court agrees with Shank's contention that the arbitrator erred[3] in deciding that the CBA gave the arbitrator, and not the Court, the authority to decide questions of arbitrability.

As a result of this ruling, this Court must conduct a de novo review of whether the grievance was subject to arbitration. Shank avers that Local 99's grievance is not arbitrable because it is a jurisdictional dispute. Local 99 contends that the grievance is not a jurisdictional dispute but a dispute between management and Local 99 and, as such, is subject to arbitration. Thus, the question before the Court is whether or not the dispute between Local 99 and Shank is a jurisdictional dispute.

In its response memorandum, Shank asserts that the CBA defines the term "jurisdictional dispute." The Court finds, however, that the CBA does not contain a definition of the term "jurisdictional dispute." Federal law defines a jurisdictional dispute as a demand "to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class. . . ." 29 U.S.C. § 158(b)(4)(D). A jurisdictional dispute is a conflict between two groups of

[3]The Court notes, however, that this decision does not have a significant impact on the question of whether or not the conflict was a jurisdictional dispute because, ultimately, both the Court and the arbitrator arrive at the same conclusion.

employees over which group should be assigned certain work. Pepsi-Cola v. Rhode Island Carpenters District Council, 962 F. Supp. 266, 278 (D.R.I. 1997). The employer is ordinarily caught between the two groups. Id. "It is of no consequence that one group never made an explicit claim to the work. The fact that a group is actually doing the work evidences that group's claim to it." Id. Courts must be wary, however, and ensure that the dispute is not one of the employer's own making. Id. This rule ensures that an employer will not manufacture a jurisdiction dispute to its own advantage. Id.

Shank first argues that the grievance is Local 99's attempt to get a "second bite of the apple" and reargue the same dispute that was the subject of the earlier jurisdictional dispute proceeding. Plaintiff's Memorandum of Law in Support of Motion to Vacate at 9. Shank argues that Local 99 voluntarily participated in the jurisdictional dispute proceeding in 2004 and should not be allowed to recharacterize the nature of the dispute and purportedly change the outcome. The record before this Court does not support a finding that this matter is a continuation of, or sufficiently related to, the conflict that was the subject of the jurisdictional dispute hearing in early 2004.

Shank makes great effort to paint this matter as a jurisdictional dispute. Shank argues that because Umling was a member of the operating engineer's union, this is a jurisdictional dispute between the engineer's union and Local 99. The record does not reflect that the engineers union or any other union made a claim to the work in dispute. In fact, at oral argument, Shank's counsel admitted that no other union was claiming a right to the work. Transcript of August 23, 2006, Motion to Vacate/Confirm Arbitration Award at 22. Consequently, because no other union made claim to the work, this is not a classic jurisdictional

dispute between two unions. See generally Pepsi-Cola, 962 F. Supp. at 278.

The Court is aware that a union member's performance of the work may set out a union's claim to the work. See Pepsi, 962 F. Supp. at 278. In essence, however, this dispute is one between Local 99 and management. Shank is not the innocent employer caught between two unions. See generally Recon Refractory and Construction Inc. v. N.R.L.B., 424 F.3d 980, 988 (9th Cir. 2005). Shank argues that because the CBA covers foremen and Umling is a foreman the Court should find this to be a jurisdictional dispute. This argument is merely an attempt to recharacterize Umling's status as a representative of management.[4] The record is clear that as to the particular matter before the Court, Umling was acting as a representative of management and not as a member of the engineer's union. This conflict was one "of the employer's own making" and was not a jurisdictional dispute.[5] See generally Pepsi-Cola, 962 F. Supp. at 278. Having now determined that the matter was not subject to the CBA's jurisdictional dispute exclusion, the Court finds that the dispute was subject to arbitration.

## IV. The Arbitrator's Remedy

Last, Shank challenges the arbitrator's remedy of the grievance and argues that the

---

[4]In fact in the February 11, 2005, letter Shank referred to Umling as a Shank supervisor. Exhibit 5. The letter did not state that Umling was a member of any union. At oral argument, counsel for Shank admitted that Umling was paid and employed by Shank. Transcript of August 23, 2006, Motion to Vacate/Confirm Arbitration Award at 4.

[5]Furthermore, the Court is troubled by Shanks's admissions in its February 2005 response to Local 99's grievance. Exhibit 5. In the letter, Shank admitted that "the incident [Local 99] describe[d] does not involve a jurisdictional dispute under" the CBA. Id. Shank's attempt to now characterize this as a jurisdictional dispute is "undercut by [Shank's] own behavior prior to litigation." Gestetner Holdings, PLC v. Nashua Corp., 784 F. Supp. 78, 82-83 (S.D.N.Y. 1992). "[T]he practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling influence." Id. at 83 (internal quotation marks and citation omitted). Shank's conduct suggests that it believed that the matter did not fall within the jurisdictional dispute exclusion of the CBA. The Court finds the admission contained in Shank's February 2005 letter to be "highly probative" of the intended meaning of the jurisdictional dispute paragraph in the CBA Id.

remedy does not draw its essence from the agreement. Shank specifically challenges the arbitrator's monetary award and the assignment of an electrician to the third shift. Shank avers that the arbitrator's remedy ignored the plain language of the CBA which made Shank "solely responsible" for hiring and judging the number of employees required to perform work on the project. Local 99 counters that since there was no specific remedy in the CBA for the arbitrator's finding that management was performing electrical work reserved for Local 99, the arbitrator's decision must stand. Local 99 argues that the arbitrator properly construed the entire agreement, including the management rights provision and any other conflicting provision in the CBA, in fashioning his remedy.

The Court again begins with the premise that judicial review of an arbitrator's decision is "exceedingly deferential." Shaw's 268 F. Supp. 2d at 121 (internal quotation marks and citation omitted). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Poland Spring Corp. v. United Food and Commercial Workers International Union, 314 F. 3d 29, 33 (1st Cir. 2002) (internal quotation marks and citation omitted). If an agreement does not require nor bar particular remedies, an arbitrator's discretion is at "its zenith." Paper, Allied-Industrial, Chemical and Energy Workers International Union v. S.D. Warren Co., 382 F. Supp. 2d 130, 142 (D. Me. 2005) (internal quotation marks and citation omitted). If the parties do not pre-negotiate remedies an arbitrator is free to fashion them within his/her discretion. Id. An arbitrator, however, may not substitute his/her own brand of industrial justice for what has been agreed to in the CBA. Id. at 137. As such, an arbitrator may not ignore the plain language of the CBA. Shaw's, 268 F. Supp. 2d at 121.

Shank argues that the management rights paragraph of the CBA should control because it

provides that Shank had the sole responsibility to decide when it needed an electrician to perform electrical work. Shank avers that the arbitrator's remedy is in direct conflict with the plain language of the CBA. The management rights paragraph in the CBA provides that Shank is

> solely responsible for managing performance of the work, including, but not limited to: deciding means, methods, and task schedules, for performing the work; hiring, . . . judging the number of employees required to perform any phase of the work, assigning the numbers of employees it considers necessary for any operation or crew . . . .

Exhibit 2 at ¶ 5. However, the CBA also provides that once the process for arbitration is invoked, the arbitrator "shall hear and decide the grievance." Id. at ¶ 11. The power to decide the grievance was governed by the limitation that "in deciding the grievance, the arbitrator shall not have the authority to change, add to, or delete from the" collective bargaining agreement. Id.

Paragraph 7 of the CBA provides, in part, that "[i]n general, the Electricians shall have jurisdiction for performing electrical work . . . ." Id. at ¶ 7. The arbitrator found that Shank violated the CBA by having a member of management perform electrical work. Since the CBA does not provide a specific remedy for *management's* violation of paragraph 7, the arbitrator was free to fashion a remedy. See Paper, Allied-Industrial, 382 F. Supp. 2d at 142.

While paragraph 7 of the CBA provided that the electricians had jurisdiction to perform electrical work, paragraph 5 gave management the right to assign and judge the number of employees necessary to perform the work. The arbitrator is charged with construing the entire collective bargaining agreement and any conflict between paragraph 7 and paragraph 5 was considered by the arbitrator. "When more than one contract provision is implicated, an arbitrator is at liberty to determine which of the two competing contract provisions governs over the other." Coca-Cola Bottling Co., Consolidated, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, 411 F. Supp. 2d 1338, 1353 (S.D. Ala. 2006) (citation

omitted). For example, Local 99's initial grievance, introduced as an exhibit before the arbitrator, identified paragraph 5 of the CBA, the management rights paragraph, as an "applicable contract provision" in the grievance. Exhibit 3. The arbitrator determined that the management rights provision was limited by the provision that electrical work had to be assigned to electricians. Where an arbitrator has "considered all of the pertinent contract provisions and his conclusion as to which provision controlled was itself an interpretation of the contract" a court "has no authority to disturb" that conclusion. United States Postal Service v. National Ass'n of Letter Carriers, 789 F.2d 18, 20 (D.C.Cir 1986) (internal quotation marks and citation omitted); see also National Gypsum Co. v. Oil, Chemical and Atomic Workers International Union, 147 F.3d 399 (5th Cir. 1998) (to the extent that two provisions in a collective bargaining agreement conflict, arbitrator has the authority to resolve the conflict). The parties bargained for the arbitrator's interpretation of the agreement not this Court's. If the arbitrator is arguably construing or applying the CBA and acting within his scope of authority this Court cannot disturb that judgement "even if he committed serious error." Kraft Foods, Inc. v. Office and Professional Employees International Union, 203 F.3d 98, 100 (1st Cir. 2000). The Court finds that the arbitrator "arguably" construed the collective bargaining agreement. Id.

**V. Conclusion**

Plaintiff's motion to vacate the arbitration award is DENIED. Defendant's motion to confirm the arbitration award is GRANTED.

SO ORDERED

Mary M. Lisi

Mary M. Lisi
United States District Judge
September 19, 2006